[No. A012244. First Dist., Div. Five. Aug. 21, 1984.]

In re the Marriage of SARAH MIRIAM KLINE and
SEYMOUR HOROWITZ.
SARAH MIRIAM KLINE HOROWITZ, Appellant, v.
SEYMOUR HOROWITZ, Appellant.

**[Opinion certified for partial publication.*]**

---

*The portions of the opinion to be published are the Introduction, Part I(A), and the Disposition. All other parts will not be published.

**COUNSEL**

Michael Madajian, De Goff & Sherman and Richard Sherman for Appellant Wife.

Sarita Camille Waite, Dowgialo & Wolf and Bernard N. Wolf for Appellant Husband.

**OPINION**

**KING, J.—**

### INTRODUCTION

Seymour Horowitz appeals, and Sarah Miriam Kline Horowitz cross-appeals, from certain property and support provisions of the interlocutory judgment of dissolution of their marriage.[1] We reverse the judgment and remand the cause for further proceedings.

The parties married in 1961 and separated in 1978. There are two children of the marriage, one born in 1962 and the other in 1964. Sarah filed a petition for dissolution of marriage in 1978. In the interlocutory judgment of dissolution, filed September 5, 1980, the court characterized and divided numerous items of real and personal property (only some of which are in

---

[1] While these appeals were pending, another judge rendered an order which, among other things, suspended Seymour's spousal support obligation. Sarah appealed that order. (*In re Marriage of Horowitz* (1984) *post,* p. 377 [205 Cal.Rptr. 880].) The appeals have not been consolidated, but we heard oral argument in both cases on the same day and we render our decisions separately, but simultaneously.

dispute on appeal). The court also ordered Seymour to pay spousal support of $500 per month, and child support of $250 per child per month.

## I. THE APPEAL

A. *The family home.*

In 1974 the parties purchased a family home in Walnut Creek, as joint tenants, for $73,000 cash, which Sarah loaned to the community. The community subsequently repaid $12,500 to Sarah.

By stipulation, the parties agreed the family home had a fair market value as of the time of trial of $165,000, with a balance of $60,500 owing to Sarah from the community for her separate property loan to purchase the property. The difference between the fair market value and this balance owing to Sarah for her separate property loan was $104,500. Being community property, it was divided equally, the court determining that each party's community share was valued at $52,250. If we translate these figures into percentages of ownership interests, Seymour owned 31.67 percent (his half of the community interest) and Sarah owned 65.33 percent (her half of the community interest and the balance owing on her separate property loan to the community).

The court awarded the home to Sarah, but ruled that Seymour had an interest therein of $52,250 (representing half the value of the home after deducting the remaining balance of $60,500 on Sarah's loan for the purchase of the home). The court further ordered that if the $52,250 was not paid to Seymour by April 21, 1985 (the day the parties' younger child turned 21), the home was to be sold and Seymour was to be paid from the proceeds of sale, without interest.

Seymour challenges the disposition of the family home: he contends that the deferral of payment until the parties' youngest child turned 21 was not justifiable as a form of child support since child support cannot extend beyond age 18, and that the failure to award interest on his share of the home decreased the present value of his share and thus caused an unequal division of community property.[2]

Sarah concedes the court could only defer disposition of the home as a form of additional child support until the youngest child reached the

---

[2]Seymour also argues that the court should have considered possible tax consequences that would be adverse to him. However, he presented no evidence of tax consequences and whether they were immediate and specific; any such consequences were thus speculative and need not have been considered by the trial court. (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 747-750 [131 Cal.Rptr. 873, 552 P.2d 1169].)

age of 18 (see, e.g., *In re Marriage of Herrmann* (1978) 84 Cal.App.3d 361 [148 Cal.Rptr. 550]), but she contends the deferral here was justifiable as a form of spousal support, citing *In re Marriage of Hurtienne* (1981) 126 Cal.App.3d 374, 380 [178 Cal.Rptr. 748]. In *Hurtienne* the trial court granted wife an option to purchase husband's interest in the family home within 17 months after rendition of judgment, but denied payment of interest to husband as a form of spousal support. The present case does not involve facts similar to the unique factual situation justifying the interest-free deferral in *Hurtienne,* where husband could not pay support because he was unemployed. (*Id.*) Not only was Seymour employed, he was ordered to pay spousal support. We conclude the trial court exceeded its jurisdiction by deferring disposition of the family home, and Seymour's interest therein, beyond the time when the youngest child of the parties reached the age of majority and Seymour's legal obligation for child support terminated.

 The court also erred with regard to the manner it awarded Seymour payment of his interest in the home. At trial Seymour's interest, based on the then value of the home, was $52,500. By deferring his receipt of that sum for up to 55 months with no payments and without interest, the court, in fact, awarded him less than $52,500, resulting in an unequal division of community property. Regardless of the equitable considerations asserted by Sarah (such as the fact that Seymour contributed nothing to the acquisition of the home), Civil Code section 4800, subdivision (a),[3] mandates an equal division of community property. (*In re Marriage of Tammen* (1976) 63 Cal.App.3d 927, 930 [134 Cal.Rptr. 161]; see also *In re Marriage of Gillmore* (1981) 29 Cal.3d 418 [174 Cal.Rptr. 493, 629 P.2d 1] [requiring payment of the nonemployee spouse's community interest in the employee spouse's retirement benefits immediately upon the latter's eligibility to receive them, even if the employee chooses not to retire].)

The foregoing errors require a reversal of the trial court's disposition of the family home. To determine whether a retrial of this issue can be avoided, we examine the alternative dispositions which were available to the trial court and explore their present viability, given the passage of four years and the fact that the children are now adults. The trial court had discretion to make any of the following orders: (1) Divide the community assets equally with the house being awarded to Sarah and Seymour receiving other community property assets equal to the value of the community interest in the home. This alternative was the most preferable, but was not available to the trial judge here because the value of community interest in the family home was greater than all other community assets. (2) Require the home to be sold for its fair market value with the net proceeds divided 31.67 percent

---

[3]All statutory references herein are to the Civil Code unless otherwise indicated.

to Seymour and 68.33 percent to Sarah. This alternative continues to be viable.[4] (3) Award the community interest in the home to Sarah and require her to execute a short-term promissory note for $52,250 bearing market rate interest and secured by a first deed of trust in favor of Seymour and payable no later than the age of majority of the youngest child. Under the facts of this case, it does not appear that such a short-term note would violate the holding in *In re Marriage of Tammen, supra,* 63 Cal.App.3d 927. This alternative is no longer viable because the youngest child has become an adult. (4) Require Sarah, by refinancing or the use of separate funds, to purchase Seymour's interest for $52,250 in order to accomplish an equal division. This alternative is no longer viable because of the passage of four years since the trial court determined that the value of Seymour's community interest at that time was $52,250. In other words, his receipt of that sum at trial would have accomplished an equal division, but deferring its payment without interest or payments for four years results in his receiving a lesser amount. (5) Order the home placed in the names of the parties as tenants in common, with Sarah owning 68.33 percent and Seymour 31.67 percent, giving Sarah, the custodial spouse (in-spouse) the right to live in the home and requiring her to pay to Seymour (out-spouse), at a specified date in the future (no later than the date the youngest child reaches the age of majority) an amount equal to his percentage interest of the fair market value at that time. ■■ ■■■ ■ ■■■ Such an order should provide that if she fails to do so, the house would be sold at that time.[5] (See

---

[4] Although the trial court could have ordered the property sold with Seymour to receive the $52,250 in payment for his community interest therein, it would appear to be more fair to both parties to determine their percentage interests and divide the net proceeds from a sale according to their percentage interest. Although the parties did stipulate that the fair market value at the time of trial was $165,000, that might not be the actual net proceeds received upon a sale. Market conditions, including interest rates, or other unforeseen factors, could result in the home selling for more or less than the stipulated value. Dividing net proceeds by percentage interests neither penalizes nor rewards either party in the event the sale proceeds are greater or less than $165,000.

[5] If such an order is made, the in-spouse should be given the right to sole use and possession of the property and would normally be given the responsibility to pay all mortgage payments, taxes, insurance and expenses of reasonable maintenance. If these costs would be less than the reasonable rental value of the property, it would appear equitable to offset any child or spousal support payments by one-half of the difference. It is appropriate for the court to reserve jurisdiction for the purposes of modification of the order in the event of any change of circumstances. As indicated above, there should be a provision in the order giving the in-spouse an opportunity to purchase the interest of the out-spouse at the end of the deferral period, or upon further order of court. At that time, the court should also retain jurisdiction to reimburse the in-spouse for capital improvements made by that spouse. Finally, such an order should require the in-spouse to maintain the property in a condition comparable to that at the time of trial and to maintain all appropriate insurance coverage with the out-spouse as a coinsured. A variant of this order is to require the parties to share the monthly payments in order to assure each receives one-half of the tax benefits flowing from them. Such an arrangement must be utilized with caution because it may become a source of continuing friction between the former spouses.

*In re Marriage of Duke* (1980) 101 Cal.App.3d 152 [161 Cal.Rptr. 444];[6] *In re Marriage of Herrmann, supra,* 83 Cal.App.3d at p. 361; *In re Marriage of Boseman* (1973) 31 Cal.App.3d 372 [107 Cal.Rptr. 232].[7]) This

[6]*Duke* has been described as holding that deferring the sale of the family home until the youngest child of the parties reaches the age of majority must always be ordered where adverse economic, emotional and social impacts on the minor result from an immediate loss of a long-established family home and are not outweighed by the economic detriment to the out-spouse by the delay in receiving his or her share of the proceeds in the equity of the family home. We believe the better rule is that of *In re Marriage of Herrmann, supra,* 83 Cal.App.3d 361, and *In re Marriage of Boseman, supra,* 31 Cal.App.3d 372, that the trial judge should weigh these factors, as well as others, and be vested with broad discretion in making a disposition of the family home.

For example, the facts in the instant case would seem to fit well within the described holding of *Duke,* since the youngest child of the parties in *Duke* was 15 at the time of the appellate court's decision and the youngest child here was 16 at the time of trial. Under these circumstances, where sale was being deferred for only two or three years, the burden would be on the noncustodial parent to show that factors favoring immediate sale outweighed adverse economic, emotional and social impacts on the child. As a practical matter, it should be noted that the emotional attachment of a child to a home may be minimal if the child is very young and of questionable significance if the child is an older teenager. However, in the event the court exercises its discretion to order a deferral of sale of the family home, we do not agree that sale of the family home must always be deferred until the youngest child of the parties reaches the age of 18. Where such deferral would delay sale for many years the trial court has the discretion to determine an appropriate earlier time at which a sale might take place, such as when the child would naturally be changing schools to one outside of the immediate neighborhood.

Additionally, we believe that the factor of economic detriment to the noncustodial parent should be broadly construed in today's economic circumstances. Given the extremely high cost of housing in urban areas in California, only the very wealthy are in a position to purchase a new home without receiving their share of a sizeable equity in an existing home. Thus, deferral of the sale of the family home would not only interfere and perhaps preclude the out-spouse from obtaining suitable housing accommodations to be able to enjoy the frequent and continuing contact with his or her children which is the public policy of California as set forth in section 4600, subdivision (a), but may well preclude obtaining adequate housing for themselves and any later family they may acquire, and limit their ability to be able to get on with living their own life in their postdivorce world. If considerable appreciation has taken place, tax factors should also be considered in reaching the decision whether or not to defer a sale, even if they are not clearly immediate and specific as would be required for accomplishing an equal division of the property. (See fn. 2, *ante.*) If deferral of the sale would deprive the out-spouse of a deferral of tax on the gain by precluding the tax-free 24-month roll-over of equity into a new residence under Internal Revenue Code section 1034, or of the one time exclusion of gain up to $125,000 under Internal Revenue Code section 121 and Revenue and Taxation Code section 17155, it is certainly equitable to consider these factors in determining the disposition of the family home. It could be argued that the loss of the tax benefits of Internal Revenue Code sections 1034 and 121, and their California counterparts, provide sufficient economic detriment to the out-spouse so as to require, as a matter of law, an immediate, rather than a deferred, sale of the family home.

[7]Neither party raises the issue of whether a *Boseman-Herrmann-Duke* order could properly be made as an additional factor of spousal support. The trial court tied the payment of Seymour's interest in the family home to the 21st birthday of the youngest child, which would indicate the deferral of the sale was ordered as a factor of child support, not spousal support. The holdings in *Boseman, Herrmann* and *Duke* all provide for deferral of the sale of the family home as an additional factor of child support. Because no case or statutory authority in California authorizes deferring sale of a family home as a factor of spousal support, it would appear that the equal division requirements of section 4800, subdivision (a), preclude such a deferral.

alternative is no longer viable, the youngest child having reached the age of majority.

To summarize the possible alternatives available to the trial judge and their present viability, it is clear that there is insufficient other community property to be able to achieve an equal division by an award of the house to Sarah with offsetting community property to Seymour. The alternatives of a short-term note from Sarah to Seymour, or a *Herrmann-Boseman-Duke* order, are no longer viable because of the passage of time since trial and the fact that the children are now adults. Thus, the only alternative presently available is to allow Sarah to purchase Seymour's community interest or, if she fails to do so, to require the property to be sold with the parties paid from the proceeds.

■■■ At this time, four years after trial, the deferred payment to Seymour of $52,250 cannot constitute an equal division of the property. In the interest of avoiding a retrial of the issue, it appears that the only practical solution is to give Sarah 90 days after the issuance of the remittitur herein to purchase Seymour's interest for 31.67 percent of the fair market value of the property as of that time. We discussed this alternative at oral argument with the parties and neither side was able to set forth reasons why this would not be a practical solution. In the event that Sarah fails to purchase Seymour's interest within the 90 days, the property should be sold and Seymour would receive 31.67 percent of the net proceeds while Sarah would receive 68.33 percent.

To the extent, since trial, Sarah has contributed to the acquisition of the property as that term is defined by section 4800.2, Seymour's interest in the property should be calculated by taking the current fair market value of the property, reducing it by the amount of Sarah's posttrial contributions to the acquisition of the property, and multiplying the balance by 31.67 percent. Obviously, the trial court should remain available to assist the parties in carrying out this disposition of the property, and retains jurisdiction for these purposes.

B. *The Mohawk Data stock and the 1977 Oldsmobile.* *

. . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 368.

## Disposition

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion. The parties shall each bear their own costs on appeal.

Low, P. J., and Haning, J., concurred.

A petition for a rehearing was denied September 19, 1984.