[No. A021867. First Dist., Div. Five. May 24, 1985.]

In re the Marriage of JOAN F. and ELMER A. BERGMAN.
JOAN F. BERGMAN, Respondent, v.
ELMER A. BERGMAN, Appellant.

**[Opinion certified for partial publication.*]**

*Parts VI and VII are not published, because they do not meet the standards for publication contained in California Rules of Court, rule 976(b).

**COUNSEL**

Cheryl Glen Anderson, Tim Provis and Elmer A. Bergman, in pro. per., for Appellant.

Sharon L. Wesselius, Gazzea & Antonioli Bernard N. Wolf and Dowgialo & Wolf for Respondent.

**OPINION**

**KING, J.**— In this case we hold that in disposing of the community interest in a pension plan in marital dissolution actions, the trial court possesses broad discretion to choose to divide it in kind between the spouses, *or* to award it to the employee spouse at its present value and accomplish an equal division of community property by an offsetting award of other assets. Although trial courts may not refrain from dividing the community interest in a pension plan, as with other community property, the court may temporarily reserve jurisdiction to divide it at a later time during the pendency of the dissolution litigation. We also hold that the trial court, in order to accomplish an equal division of community property, may require a spouse awarded more than one-half of the community property to execute a secured short-term promissory note in favor of the other spouse

which bears a reasonable rate of interest. Finally, although the Family Law Act authorizes an award of attorney fees based upon a determination of need and the ability to pay, we hold that the trial court in dissolution proceedings may also impose attorney fees against a party if that party's tactics or actions not based on good faith are frivolous or cause unnecessary delay.

Elmer Bergman appeals from an interlocutory judgment of dissolution of his marriage to Joan Bergman. He also appeals from subsequent orders to vacate the family residence, and denying his motion to modify the interlocutory judgment. Joan cross-appealed, but later dismissed her cross-appeal.[1] We modify the language of the judgment as to Joan's pension plan and, as modified, the judgment and orders are affirmed.

## I. *Facts*

Joan and Elmer were married August 22, 1959, and separated April 19, 1980. They had five children, two of whom were minors at the time of trial.

Elmer was employed in federal civil service from 1961 until 1976. Prior to marriage he had performed almost two years of military service which counts as service towards his federal longevity retirement. In 1976, as a result of developing severe hypertension, Elmer became permanently and totally disabled. He has been receiving a disability pension since that time. Pursuant to his pension plan Elmer becomes eligible for longevity retirement when he reaches age 62 in 1997 at which time his benefits will be recomputed as longevity retirement.[2]

During the marriage Joan worked at several jobs. She was a school teacher at the time of the separation, but sometime thereafter she started working for a tax planning service. As a teacher for eight years she made contributions to the California State Teachers' Retirement System. After separation Joan and the minor children moved out of the family residence.

Following a trial on the division of community property and other issues, the court issued a statement of decision and an interlocutory judgment of

---

[1]Joan previously obtained an order vacating and setting aside an earlier interlocutory judgment. Since no appeal was taken from the granting of that order, we need not review the prior judgment, documents executed in conjunction with it or the order setting it aside.

[2]Applying *In re Marriage of Samuels* (1979) 96 Cal.App.3d 122 [158 Cal.Rptr. 38], the trial court correctly ruled that Elmer's disability benefits are separate rather than community property; however, upon becoming eligible for longevity retirement, there is a community interest in those benefits. (See also *In re Marriage of Stenquist* (1978) 21 Cal.3d 779 [148 Cal.Rptr. 9, 582 P.2d 96].)

dissolution of marriage providing, insofar as the published portion of this opinion is concerned:[3] (1) a determination and division of the community property interests in both Elmer's and Joan's pensions; (2) a requirement for execution of a promissory note to accomplish an equal division of community assets; (3) an order that Elmer pay Joan $15,000 for attorney fees and costs.

## II. *The Pension Plans*

### a. Method of division.

Elmer's primary contention is that the court abused its discretion by failing to divide the community interest in his defined benefit pension plan on an in kind basis; instead the court used the cash out method.[4] It determined the present value of the community property interest in Elmer's pension plan, awarded it to him, and gave an offsetting award of other community property to Joan. Elmer also contends, even if this was not an abuse of discretion, the court erred in fixing the present value of the community interest in his pension plan at $86,000.

---

[3]Unpublished portions of this decision consider Elmer's appeal of the award of the family residence to Joan as part of her half of the community property and contentions of clerical error.

[4]For purposes of our discussion of pension plans, it is appropriate to define terms we will be using. Both Elmer's and Joan's pension plans were defined benefit plans which, in their particular cases, required contributions by the employee. The benefit each will receive, however, does not depend on the dollars contributed by them or their employer, but is based on a combination of factors, including highest income level achieved, years of service at retirement and age at retirement. To determine the present value of such a plan, it is necessary that expert testimony, normally from actuaries, be presented. This testimony includes not only the expert's opinion as to present value, but what factors, economic, health and otherwise, the expert considered in reaching his opinion.

Pension rights may be vested (a right which survives the discharge or voluntary termination of the employee), or nonvested (a right which requires additional service to become vested). The right may also be matured (employee has an unconditional right to retire and obtain immediate payment of benefits) even though the employee has not chosen to retire. (See *In re Marriage of Brown* (1976) 15 Cal.3d 838, 842 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].)

Community interest in defined benefit pension plans, as we shall discuss, may be disposed of in dissolution actions by a cash out (the entire community interest at its present value is awarded to the employee spouse with offsetting assets awarded to the other spouse to accomplish an equal division) or by a division in kind (the community interest is divided between the parties, and the plan, when benefits become payable, usually makes separate payments to each according to their proportionate interest).

As contrasted to a defined benefit plan, the other kind of retirement plan is a defined contribution plan where the employer's obligation is related to its annual contribution. The benefit for the employee upon retirement depends upon the value of the employee's account at that time. There is no need for expert testimony to determine the present value of a defined contribution plan at dissolution because its value is the amount of contributions made between the marriage and separation, plus accruals thereon, and all accruals thereon between the date of separation and trial of the issue.

We first address the claimed abuse of discretion by the court's choosing to cash out Joan's interest and award the entire community interest in Elmer's plan to him. Upon dissolution of a marriage, the trial court has broad discretion in the division of the community property interest in a spouse's pension rights and can exercise its discretion in either of two ways. The trial court may either determine the present value of community property rights and award them to one spouse with offsetting community or other assets to the other (commonly called the cash out method), or it may divide the community interest in kind between the spouses, reserving jurisdiction to supervise future payments to each spouse. (*In re Marriage of Brown, supra,* 15 Cal.3d at p. 848.) Prior to its decision in *Brown,* our Supreme Court had indicated a preference, when feasible, for the trial court to award the employee spouse all of the community interest in his or her pension rights and to compensate the other spouse with other property of equal value. (*Phillipson* v. *Board of Administration* (1970) 3 Cal.3d 32, 46 [89 Cal.Rptr. 61, 473 P.2d 765], disapproved on other grounds in *In re Marriage of Brown, supra,* 15 Cal.3d at p. 851 fn. 14.) However, in deciding *Brown,* the Supreme Court referred to its statement in *Phillipson* and expressly stated it had not intended to specify a preference; thus the trial "court retains the discretion to divide the community assets in any fashion which complies with the provisions of Civil Code section 4800." (*In re Marriage of Brown, supra,* 15 Cal.3d at p. 848 fn. 10; see also *In re Marriage of Skaden* (1977) 19 Cal.3d 679, 688 [139 Cal.Rptr. 615, 566 P.2d 249]; *In re Marriage of Freiberg* (1976) 57 Cal.App.3d 304, 312 [127 Cal.Rptr. 792], disapproved on other grounds in *In re Marriage of Gillmore* (1981) 29 Cal.3d 418, 425 [174 Cal.Rptr. 493, 629 P.2d 1].)

Here, both parties presented evidence from experts on the present value of Elmer's pension benefits and his probability of receipt of them. The court exercised its discretion in favor of awarding the community interest in those benefits solely to Elmer, awarding offsetting assets to Joan to accomplish an equal division. It is clear the court did in fact exercise its discretion, since it utilized the cash out method to dispose of Elmer's pension while, as we shall discuss later, it divided the community interest in Joan's pension benefits in kind.

Elmer's chief criticism of the court's exercise of discretion is based on his contention that due to his poor health the actual receipt of his longevity retirement benefits is too uncertain and speculative for the trial court to choose the alternative of a cash out to him, since it places all of the risks of future receipt of benefits on him. We know of no case which holds that one spouse's health condition deprives the court of its discretion to cash out the other spouse's interest in the former's pension plan and compels instead a division in kind. We decline to so hold. Health is only one of many factors

to be considered by the trial judge. The value of Elmer's longevity retirement benefits is less speculative than would usually be true. The parties stipulated that 89.1 percent of his years of service were during marriage and additionally stipulated there should be a 25 percent reduction in the present value of his pension rights to take into account his poor health and the increased risk of his early death. Additionally, because of his disability, there is no need to speculate about what advances he would make up the career ladder or how many years he would work after separation. Thus, as to fixing a value, it can be done with greater certainty than would normally be true.

It is true that Elmer's reduced life expectancy is a factor to be used not only in determining present value, but also in deciding how the trial court should exercise discretion in awarding the community property interest in pension benefits.[5] All other things being equal, where the employee spouse has significant health problems, the trial court could very well find that an in kind distribution is the method which is most fair to both parties.[6] However, depending upon the evidence presented and the arguments of counsel, there are numerous factors the court may consider in determining how to exercise its discretion to divide community property interest in pension rights, and the weight to be given to each is peculiarly within the purview of the trier of fact.

The other alternative method of awarding the community share of pension rights or benefits is to divide that share between the parties in kind. The court will usually use the time rule to allocate separate and community interests (*In re Marriage of Judd* (1977) 68 Cal.App.3d 515, 522 [137 Cal.Rptr. 318]; *In re Marriage of Freiberg, supra,* 57 Cal.App.3d at p. 310), but is not required to do so. (See *In re Marriage of Poppe* (1979) 97 Cal.App.3d 1 [158 Cal.Rptr. 500] [court utilized a point system rather than a strict time rule because of the factual circumstances].)

---

[5]One of the more comprehensive lists of factors that might be considered is set forth in 1979 Cal. Fam. L. Rep. 1050-1051 (reproduced as chart 5 in Cal. Fam. Law Prac.), which we attach as an exhibit to this opinion for the benefit of the bench and bar. Changes in the law since the publication of this chart should be considered, including the enactment by Congress of the Domestic Relations Tax Reform Act of 1984 (Pub.L. No. 98-369) and the Retirement Equity Act of 1984 (29 U.S.C. § 1001 et seq.) which now requires that private as opposed to public plans provide a survivorship benefit for spouses and former spouses.

[6]One respected domestic relations actuarial expert has expressed the view that the fairest disposition of community interests in pension plans is the cash out method, not a division in kind. See "A Fair Value is a Fair Value," Projector, Family Law News and Review, No. 2, Los Angeles County Bar Association. Of course the actuary is looking at the interest in the pension plan isolated from all other factors which the trial court may consider in exercising its discretion between a cash out and a division in kind.

Elmer exercised his right pursuant to Code of Civil Procedure section 632 to request a statement of decision on the issue of "distribution of respondent's retirement rather than reservation of benefits until received by respondent." The court in its statement of decision indicated it chose to cash out Joan because: (1) there were sufficient assets to award Joan property of equal value, (2) the economic circumstances justified the division, and (3) the court felt this was the preferable mode of division since it resulted in pension rights going to the employee spouse. Thereafter, in a request for clarification of statement of decision, Elmer indicated it was unclear what economic circumstances the court relied upon to justify the distribution of his retirement plan. The court issued a clarification which stated that the court had considered the issue relative to the uncertainty of Elmer's receiving his retirement rights but had decided in light of the nature and extent of community property and the need to have an equitable, workable and practical division of property, to exercise its discretion to award the community interest in the pension rights to Elmer based upon its present value.

Because it is not possible to develop comprehensive guidelines for trial court's to follow in deciding whether to cash out or divide in kind community interests in pensions, and because this decision is reached primarily by the weighing of equitable and factual considerations, appellate courts should not second guess the exercise of the broad discretion of trial courts in the absence of a clear showing of an abuse of that discretion. (See *In re Marriage of Emmett* (1980) 109 Cal.App.3d 753 [169 Cal.Rptr. 473]; *In re Marriage of Adams* (1976) 64 Cal.App.3d 181 [134 Cal.Rptr. 298].) Elmer has not sustained his burden of demonstrating an abuse of discretion by the trial court; the award to Elmer of the community property interest in his pension plan must therefore stand.

b. ■ Valuation of Elmer's pension.

Elmer next contends the court erred in fixing the present value of the community interest in his longevity retirement benefits in the amount of $86,000. Each party presented expert testimony from actuaries as to the present value of the longevity pension benefit Elmer would be entitled to receive upon attaining the age of 62 in 1997.[7] As previously indicated, the parties stipulated to the percentage of benefits which were community (89.1 percent), and the reduction in present value which should be made because of Elmer's health (25 percent). Both experts used these figures in reaching their valuations.

---

[7]See footnote 2, *ante.*

The actuarial method employed by the experts for both parties is an appropriate method for determining the present value of pension benefits to be received in the future. (*In re Marriage of Skaden, supra,* 19 Cal.3d 679; *In re Marriage of Kasper* (1978) 83 Cal.App.3d 388, 391-392 [147 Cal.Rptr. 821].) Joan's expert expressed his opinion that the present value of Elmer's retirement benefits was $156,225 with the community share of 89.1 percent being $139,196. Reducing the value further because of the stipulated 25 percent reduction for Elmer's ill health, Joan's expert reached his opinion that the present value of the community interest in the pension benefits was $104,397. Elmer's expert, utilizing essentially the same process, reached an opinion that the present value of the community interest was $61,200. There were differences in the assumptions of the two experts which caused them to reach different opinions as to the present value, including the fact that Elmer's expert used a discount rate of 10 percent while Joan's expert used 8 percent. There was also a difference of view between them as what the differential would be between future increases in costs of living and future interest rates. These differences, as with the differences in their opinions as to present value, were based upon the exercise of their professional judgment, which must be weighed by the trial court.

Elmer argues that the present value of $86,000 found by the court was erroneous. On appeal he suggests present values ranging from $2,126 to $27,200. There is no evidence in the record to support his suggested valuations. Unfortunately, there is also nothing in the record setting forth the trial judge's calculations. There was no request by Elmer for the trial judge to supply the calculations by which he arrived at the figure of $86,000. While it is true Elmer requested a statement of decision on the issue of "valuation of respondent's retirement pension" pursuant to Code of Civil Procedure section 632, the trial court in its statement of decision stated that it "finds that the value of [Elmer's] right to retirement benefits after age 62 was $86,000 at the time of trial." Since Elmer did not ask for the calculations by which the court reached this value, the court's response in its statement of decision was sufficient. We must assume that response satisfied Elmer, since in his request for a clarification of statement of decision, he did not ask for a statement of the calculation by which the court arrived at a present value of $86,000; he only asked for a statement that the court had considered the uncertainty of his receiving his retirement in reaching its decision to choose the cash out method rather than an in kind division. Under these circumstances all inferences are indulged in support of the finding of the trial court and we simply examine the record to determine if there is substantial evidence to support it.

Until recently, trial courts seemed to possess almost unlimited discretion to fix values, as long as the value selected fell between the high and low

values expressed in the opinions of the experts' witnesses, and the trial court's value was supported by substantial evidence. (See *In re Marriage of Webb* (1979) 94 Cal.App.3d 335, 344-345 [156 Cal.Rptr. 334] [expert testimony gave value to goodwill of business of zero dollars and $31,468 respectively; affirmed holding that value was $16,000]; *In re Marriage of Fortier* (1973) 34 Cal.App.3d 384, 389-390 [109 Cal.Rptr. 915] [testimony of experts on value of goodwill of business from zero dollars up to $300,000; affirmed value fixed at $10,963].)

The approach of these cases has been questioned in the recent decision of *In re Marriage of Hargrave* (1985) 163 Cal.App.3d 346 [209 Cal.Rptr. 764]. There the husband and his experts testified there was no asset of goodwill in the community business. The Court of Appeal pointed out that the referee hearing the case properly rejected that testimony because, for reasons stated in the opinion, it did not comply with the law. The wife's experts testified there was goodwill valued at $100,000, and wife argued since the testimony of husband and his experts had to be disregarded, the only evidence left in the record was that goodwill had a value of $100,000. However, the court in *Hargrave* pointed out that a judge is not bound to accept the testimony of any witness. The court reviewed the record to determine whether there was any substantial evidence to support the value of $35,000 for goodwill found by the referee and adopted by the trial court. The appellate court reversed, finding there was no evidence in the record to support a value of $35,000 for goodwill and that valuation of goodwill should not be an arbitrary decision. The court stated: "The referee, having decided to reject all of the testimony on the subject of goodwill valuation, was left with a record barren of evidence on this vital issue. Under that circumstance the referee should have required the parties to furnish additional evidence or he should have appointed his own expert to testify on that issue. (See Evid. Code, § 460.)" (163 Cal.App.3d at p. 355.) Thus all evidence on the value of goodwill was rejected, leaving the trier of fact no basis on which to determine there was goodwill of a value of $35,000. Normally the trial court in the exercise of its broad discretion makes an independent determination of value based upon the evidence presented on the factors to be considered and the weight given to each. The trial court is not required to accept the opinion of any expert as to the value of an asset.[8]

---

[8]The most typical example is the fixing of the value of a family residence. Each side may present expert testimony including information about the residence, comparable sales, economic conditions and other factors, all leading to how that expert reached his or her opinion as to value. The court may accept, reject, or give little or great weight to each factor and therefore conclude the value is somewhere between the high and low opinions of the experts. Trial judges recognize that no skillful attorney is going to present expert opinions as part of his case which are, to say the least, unfavorable to his client.

We hold, under the circumstances of this case, that the holding of *Hargrave* is inapplicable. Here the court listened to extensive expert testimony by actuaries called by each party. The court rejected the opinion of each expert as to present value but nonetheless was presented with sufficient evidence in the course of their testimony to reach its own independent determination of the present value of Elmer's pension benefits based upon this evidence and the weight the court gave to it. Although it is a better practice for courts in their statements of decision to set forth the calculations by which they arrive at values of assets or the community interests therein, the failure to do so does not constitute reversible error. Here, since there is substantial evidence in the record to support the court's value of $86,000 and since Elmer never asked for the court's calculation to be included in the statement of decision, there is no reversible error. Elmer's request for a statement of decision on the issue of the value of his pension was, at best, a request for the specific dollar amount of value found by the court, not a request for the calculation by which the court determined that value. If Elmer wanted the court to set forth its calculation, that request should have been made in his request for a statement of decision.[9] As previously indicated, since Elmer's later request for clarification of the statement of decision raised no issue with regard to value or how it had been calculated, the court was justified in believing its original statement of decision fully responded to Elmer's request for a statement of decision on the value of the community interest in his pension plan.

It appears the court reached its value of $86,000 by rejecting the discount rate utilized by each of the experts and applying its own rate somewhere in between. This it is entitled to do. Additionally, the court may have used a figure between those used by the actuaries for the differential that would occur in the future between the increase in cost of living and interest rates.

Elmer's final complaint about the trial court's determination of a present value for the community interest in his pension plan is that it "failed to take into account any diminution by Federal or State taxes." While it is true that Elmer's longevity benefits will to some extent be subject to state and federal income taxes when he begins to draw them in 1997, these tax consequences are not immediate and specific and thus were properly disregarded by the trial court in determining present value. (See *In re Marriage of Fonstein* (1976) 17 Cal.3d 738 [131 Cal.Rptr. 873, 552 P.2d 1169]; *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557 [63 Cal.Rptr. 13, 432 P.2d 709].)

---

[9]The burden is on the party requesting a statement of decision to specify each issue on which a statement is requested. The request for a statement of decision must specify those controverted issues as to which the party is requesting a statement of decision. (Code Civ. Proc., § 632.)

c. Award of Joan's pension plan.

 Elmer contends the trial court abused its discretion in ordering an open-ended reservation of jurisdiction over the community property interest in Joan's pension plan, especially since the court cashed Joan out of his pension plan and awarded it to him, making an offsetting award to her to accomplish an equal division of community property. Joan replies that the trial court has broad discretion to reserve jurisdiction over the community interest in pension plans and to divide that interest when benefits become payable.

Thus, the parties disagree as to whether the trial court made the best disposition of Joan's pension. They do agree, however, both in their briefs and at oral argument, that the court did not divide the community interest in Joan's pension; it simply retained jurisdiction to do so when Joan becomes eligible to obtain benefits under the plan.[10] If the parties' description of the trial court's disposition (or nondisposition) of the community property interest in Joan's pension plan is accurate, we would agree that the trial court abused its discretion.

Pursuant to Civil Code section 4800, subdivision (a), in a dissolution action "the court shall . . . in its judgment of dissolution of the marriage . . . or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community property and the quasi-community property of the parties equally." By this direction the Legislature requires that community property be divided at the time of the litigation of the dissolution action, although it has recognized the trial court's power to bifurcate and try one or more issues in the case, including termination of marital status, reserving jurisdiction for a later time to try other issues, including support and the division of any remaining community property. Neither the legislative history of section 4800, nor any case analysis but one, provides authority for the proposition that a court may reserve jurisdiction indefinitely to divide a community asset. It is not uncommon, and is often of assistance to the parties in reaching a settlement of other issues, for the court to bifurcate and try one or more issues before or after the termination of the marital status of the parties. Quite often there are cases with a pivotal issue which, once it is decided, will enable the parties to settle all other issues. This may be an issue of value, the character of property as separate or community, which party is to be awarded a specific community asset, or

---

[10]A distinction should be drawn between an open-ended reservation of jurisdiction to divide community interests in a pension in the future, and one which presently divides those interests and reserves or retains jurisdiction to supervise their payment when benefits are received in the future. As we shall discuss the court has no authority to do the former, but does have authority to do the latter.

whether an asset such as goodwill even exists. In such cases the court is encouraged to separately try and decide the pivotal issue in the hope the parties will then be able to settle all other issues. The best resolution in any case, especially dissolution actions, is one reached by agreement of the parties themselves.

The trial court possesses broad discretion to consider the manner in which issues should be tried, including the bifurcation and separate trial of pivotal issues. However, nothing in Civil Code section 4800, including the language "shall . . . at a later time if it expressly reserves jurisdiction to make such a property division, divide the community property . . .," authorizes the court to wait for years until a pension plan begins paying benefits in the future before dividing the community interest therein.

Any research of California law with regard to the disposition of community interests in pension plans, whether or not vested, should begin with *In re Marriage of Brown, supra,* 15 Cal.3d 838. In adopting a new rule that vested and "nonvested pension rights are not an expectancy, but a contingent interest in property" the court not only changed existing law, it also provided guidance to the trial courts as to the two methods of disposition which trial judges have available to them in dividing community interests in pension plans. (*Id.,* at p. 841.) Our Supreme Court clearly specified *only* two methods of dividing community pension rights. The trial court can determine the present value of the community interest in the pension right and cash out the other spouse by awarding it to the employee spouse, or, if "it should not attempt to divide the present value of pension rights, it can instead award each spouse an appropriate portion of each pension payment as it is paid." (15 Cal.3d at p. 848.) Nowhere in *Brown* does the Supreme Court authorize or suggest that there is statutory or case authority for a trial court to retain open-ended jurisdiction to divide community interests in a pension plan after the conclusion of litigation of the dissolution action.

The only case to authorize a reservation of jurisdiction over the division of community interests in a pension plan until benefits could be received is *In re Marriage of Carl* (1977) 67 Cal.App.3d 542 [136 Cal.Rptr. 703]. We respectfully disagree with the decision in *Carl* and believe a discussion of the reasoning in that case will demonstrate its erroneous result. In *Carl* the trial court had failed to consider the husband's community interest in the nonvested pension plan of the wife because the trial had occurred prior to the complete change in the law announced in *Brown.* The court in *Carl* stated that the husband "is entitled to share in [wife's] pension, if and when she receives it" but, since it is nonvested, "There is still nothing for the trial court to divide." Because of this analysis, the court determined that instead of reversing and remanding the cause to the trial court, it would

simply modify the judgment by adding " '[t]he court reserves jurisdiction regarding [husband's] claim to an interest in [wife's] nonvested pension plan.' " (67 Cal.App.3d at p. 546.) As a result of *Carl,* several later cases, without analysis, added this method of disposition of interests in pension plans to the two alternatives authorized in *Brown.*

We disagree strongly with this ruling in *Carl* because "Pension rights, whether or not vested, represent a property interest; to the extent such rights derive from employment during coverture, they comprise a community asset subject to division in a dissolution proceeding." (*In re Marriage of Brown, supra,* 15 Cal.3d at p. 842.) Thus, pursuant to *Brown,* there is something for the trial court to divide, that is, the community property interest of the parties in the pension. It is a property right, whether vested or nonvested, not an expectancy. In keeping with the intent of the Legislature providing for the division of community assets during the dissolution litigation, trial courts have only the two alternatives stated in *Brown,* i.e., to cash out the nonemployee spouse at the present value of the community interest in the pension and award it to the employee spouse, or to divide the community interest in the pension in kind. Additionally, we conceive of no good reason to perpetuate family law litigation indefinitely when such property interests can and should be divided as part of the litigation process of dividing all other community property of the parties.

After a thorough search of the record, we are unable to find any evidence presented to the trial court of the present value of Joan's pension plan, the amount of her contributions to it, or, indeed, even its existence. Apparently the disposition of the community interest in her pension plan was agreed to during an in-chambers conference, probably immediately prior to the commencement of trial. Although we only surmise that is what has occurred here, it is appropriate to remind the trial bench and bar that our review is limited to the record before us. Despite the informality which often accompanies the litigation of family law cases, it is crucial that statements be placed on the record memorializing stipulations reached in off-the-record conferences between counsel, or counsel and the court.

Despite the absence of anything in the record about the existence of Joan's pension plan, the parties nonetheless agree there is such a plan with the State Teachers' Retirement System. Joan testified she had been a teacher for eight years. A review of her property declaration filed prior to trial does list such a pension and values it at $10,700. We suspect, however, that this represents the amount of her contributions to the plan, not the plan's present value at the time of the filing of her declaration.

Nevertheless, although no evidence was presented to the court as to the amount of the contributions, the terms of the plan, the date at which Joan would be eligible for payment of retirement benefits, or any facts upon which her retirement benefits could be presently valued, the court still had the ability to make an in-kind division of the community interest in the plan by applying the time rule. "This method of dividing the community interest in the pension renders it unnecessary for the court to compute the present value of the pension rights, and divides equally the risk that the pension will fail to vest." (*In re Marriage of Brown, supra,* 15 Cal.3d at p. 848.) Thus, even though there is neither expert testimony nor any other information except for the fact that a pension plan exists, and regardless of whether the interest in the plan is vested, the court can divide the community interest between the parties.[11] Thus the court had the discretion to divide the community interest in Joan's pension by a cash out of Elmer's interest or an in-kind division, but it did not have authority to retain an open-ended jurisdiction over the division of the community interest.

■ However, our review of the trial court's order in the interlocutory judgment reveals, contrary to the posture of the parties on appeal, that the court did not simply retain an open-ended jurisdiction to divide the community interest in the pension plan; it did indeed divide it. As to each party the court made the following award in the interlocutory judgment of dissolution: "One-half of the community interest in the California State Teachers' Retirement Benefits in [Joan's] name. The court reserves jurisdiction to divide said benefits which shall be distributed at the earliest date when [Joan] is eligible to draw her pension."

This language accomplishes a present division of the community interest in Joan's pension plan. Indeed, since the plan itself was joined as a claimant and appeared in the action, if the wording of the order is modified to reflect the dates of marriage and separation, it is unlikely any supervision by the court will ever be necessary.[12]

To accomplish this, it is necessary that the wording more carefully allocate community and separate interests by the time rule, that is, by a consid-

---

[11]Thus, in a case like *In re Marriage of Hargrave, supra,* 163 Cal.App.3d 346, when no evidence is before the court as to the interest in the plan, in addition to that court's suggestions that the trial court can require additional evidence or appoint its own expert, it can also divide the community interest in kind.

[12]For a discussion on joinder of pension plans see Hogoboom and King, California Practice Guide Family Law (TRG 1985) at pages 8:131 through 8:133.

eration of the ratio of the time Joan was employed as a teacher between the dates of marriage and separation, and the total amount of time she was so employed. Again the record is incomplete. It appears that Joan was still teaching at the date of separation but soon thereafter terminated that employment. It is unknown whether Joan has returned to teaching or will do so in the future.

Under these circumstances, since we uphold the trial court's exercise of discretion to award the community interest in Joan's retirement plan to the parties in kind, we modify the provisions of the interlocutory judgment as to the community interest in Joan's retirement plan with the California Teachers' Retirement System. Said interest shall be that fraction of the total benefits, the numerator of which represents the number of months of Joan's employment between the dates of marriage and separation, and the denominator of which is the total number of months of Joan's service. (See *In re Marriage of Judd, supra,* 68 Cal.App.3d at p. 523.) This fraction, multiplied by the benefit paid under the plan, is the community property interest in benefits under the plan and it is awarded one-half to each party. Any remaining benefit paid under the plan is confirmed to Joan as her separate property.[13]

In making this decision, we acknowledge that the amount which Joan will receive from her pension plan upon achieving eligibility for retirement is less certain than is true with Elmer's plan. It is not known if Joan will return to teaching or what salary level she may ultimately achieve if she does so. By using the formula set forth above, it makes no difference whether or not Joan returns to teaching. This formula still determines that portion of benefits which are community.

The decision how to award the community interest in future pension plan payments is one within the trial court's broad discretion and Elmer has made no showing of any abuse of that discretion as to Joan's retirement plan. (See *In re Marriage of Skaden, supra,* 19 Cal.3d at p. 688; *In re Marriage of Brown, supra,* 15 Cal.3d at p. 848.) Considering all of the circumstances, it appears that the court's reservation of jurisdiction was reasonable. The fact the trial court present valued Elmer's pension plan and awarded it to

---

[13]This change will not make this order a "Qualified Domestic Relations Order" under the Retirement Equity Act of 1984. However, since this is a public rather than private plan it would appear the act does not apply. If one of the parties believes for this or any other reason that the order should be modified further for purposes of the proper proportionate payment of benefits when they are paid, a motion to do so can be addressed to the trial court.

him (with offsetting assets to Joan), does not require the community interest in Joan's plan to be treated identically.[14]

### III. *Date of Valuation of Community Assets*

■ Elmer claims the community assets, including the family residence, should have been evaluated and divided using their value at the date of separation instead of at the time of trial. In valuing the property at the time of trial, the trial court conformed with existing case and statutory law.

Civil Code section 4800, subdivision (a), directs the court to value community assets as near to the time of trial as practicable, except that the court *may,* on appropriate notice and a showing of good cause, value the property at a date after separation and before trial.[15] Elmer made such a request, which Joan opposed on the basis of a lack of good cause. The trial court properly refused the request.

A decision relied upon by Elmer, *In re Marriage of Hayden* (1981) 124 Cal.App.3d 72 [177 Cal.Rptr. 183], actually supports the court's decision to value the property as of the time of trial. *Hayden* concerned a situation where the possible valuation dates were either at the time of the original trial or at the time of a later trial upon a remand by the appellate court. The *Hayden* court held that equity required that "section 4800 must be interpreted as requiring community property to be divided at its value as near

---

[14]Elmer's reliance on *In re Marriage of Shattuck* (1982) 134 Cal.App.3d 683 [184 Cal.Rptr. 698], is misplaced. The issues in *Shattuck,* including the fact that one spouse's plan was matured, were not identical to those here and, in fact, the *Shattuck* court reaffirmed the trial court's broad discretion to choose a method of dividing community property. (*Id.,* at p. 687.)

[15]Civil Code section 4800, subdivision (a), states in pertinent part that for purposes of dividing community property "the court shall value the assets and liabilities as near as practicable to the time of trial, except that, upon 30 days' notice by the moving party to the other party, the court for good cause shown may value all or any portion of the assets and liabilities at a date after separation and prior to trial to accomplish an equal division of the community property and the quasi-community property of the parties in an equitable manner."

The wording of the requirement of notice for an alternate valuation date has generated some confusion. The section does not require a noticed motion, just timely notice from the requesting party to the other party. Elmer gave written notice to Joan's counsel in a timely fashion and filed the original with the court, with a proof of service. The notice referred to the code section as authority, stated the alternate valuation date sought and explained the basis for the request. Elmer then filed a noticed motion for an alternate valuation date supported by an extensive memorandum of points and authorities and his supporting declaration. Joan filed opposition. Either notice would have satisfied the statutory requirements. Although not required by the statute, we believe the use of a noticed motion alone is the preferred practice since it results in a determination in advance of trial of whether the request is granted. This helps reduce unnecessary discovery, minimizes the expense of experts in reaching their opinions and, in many cases, will assist in achieving settlement.

as practicable to the court proceeding in which a *proper* division takes place. While normally it will be at trial, it may also be on remand after appeal." (*Id.,* at p. 79; italics in original.)[16] The trial court's decision to value the property as of the time of trial was correct.[17]

## IV. *Note to Equalize Division of Community Property*

In order to equalize the division of community property, the trial court ordered that Joan execute a promissory note in favor of Elmer for $56,809.71 payable *three years* after the date she acquires possession of the family residence from Elmer, or upon its sale by her prior to the end of the three-year period. The note will bear interest of 10 percent compounded annually and be secured by a second deed of trust on the family residence. Elmer claims the court abused its discretion by awarding the promissory note to accomplish an equal division rather than ordering the house sold. He fails to show any abuse of discretion.

Promissory notes to equalize the division of community property have been invalidated where the notes were for an *extended* period of time and bore inadequate interest rates. (*In re Marriage of Tammen* (1976) 63 Cal.App.3d 927 [134 Cal.Rptr. 161] [note payable in 10 years, at an interest rate of 7 percent uncompounded]; *In re Marriage of Hopkins* (1977) 74 Cal.App.3d 591, 597-598 [141 Cal.Rptr. 597] [note for an extended period characterized by court as "just about the rest of [the wife's] life expectancy," at a 7 percent interest rate].)

Courts have discretion to use promissory notes for relatively short periods at reasonable interest rates. In *In re Marriage of Slater* (1979) 100 Cal.App.3d 241 [160 Cal.Rptr. 686], the court approved the order for a five-year note bearing 10 percent interest compounded annually to equalize the division of community property. The *Slater* court distinguished its facts from those of *Tammen* stating, "In the instant case, however, the wife will receive the entire amount of the promissory note ($24,430), plus interest, at the very latest in five years. This is not a long and uncertain deferment of the wife's enjoyment of the award. Furthermore, the note was to bear

---

[16]Elmer has also misconstrued the holding in a recent decision by this division, *Brink* v. *Brink* (1984) 155 Cal.App.3d 218, 225 [202 Cal.Rptr. 57]. *Brink* did *not,* as Elmer claims, hold that valuation was proper at the date of the original trial. *Brink* is also inapplicable to the instant case since it involved an independent action in equity not governed by the Family Law Act.

[17]*Hayden* is often cited as authority for the proposition that upon remand for retrial community assets must be valued as of the time of retrial for purposes of division. Although this interpretation may be appropriate in the event of a retrial as to all community property owned by the parties, even there, and certainly where a retrial involves less than all of the community property, the better interpretation of the holding of *Hayden* is that upon a retrial the court should consider equitable factors in determining whether community property should be valued as of the time of the original trial or the retrial.

interest at the rate of 10 percent per annum with the interest payable annually. It was secured by a pledge of the husband's one-half interest in the partnership investments." (*Id.*, at p. 248; see also *In re Marriage of Horowitz* (1984) 159 Cal.App.3d 368, 373 [205 Cal.Rptr. 874].)

Here, the note bears 10 percent interest compounded annually, is secured by a substantial equity in the family residence and will be paid in full, at the latest, *three years* after Elmer relinquishes possession of the residence to Joan. Additionally, as suggested in *Hopkins,* the entire amount may become due sooner because of the provision in the note requiring payment in full if Joan sells the house sooner. (*In re Marriage of Hopkins, supra,* 74 Cal.App.3d at p. 598.) The trial court specifically found that the term and interest rate of the note were reasonable in light of current economic conditions and the facts of the case.[18] Under these circumstances the award of an equalizing promissory note does not impose upon Elmer a long and uncertain deferment of his enjoyment of the award. The 10 percent interest and short payment period adequately compensate for the potential effects of inflation. (*In re Marriage of Slater, supra,* 100 Cal.App.3d at p. 248.) The note is fully secured. An additional virtue of the order in this case is that it does not compel Joan to sell the family residence until after the youngest child reaches majority.

Elmer also maintains that the promissory note does not equalize the division of the community assets, since the trial court failed to consider the tax liability which Elmer might incur upon receipt of payments on the promissory note. Elmer's fears of dire tax consequences are unfounded due to the enactment of the Domestic Relations Tax Reform Act of 1984. New section 1041, added to 26 United States Code, eliminates recognition of gains or losses, for tax purposes, on transfers of property between spouses made incident to dissolution. As a result, where one spouse takes more than half of the community property, compensation of the other spouse with separate property or a promissory note, is not a taxable event. The former rule set forth in *Carrieres v. Commr.* (1975) 64 T.C. 959, affirmed (9th Cir. 1977) 552 F.2d 1350, which made this a taxable event is changed. The transfer in the present case qualifies as incident to dissolution and would be exempted. (26 U.S.C. § 1041(c)(2); see also 1984 U.S. Code Cong. & Admin. News, pt. I, A-7, pp. E503-E504.)

---

[18]We point out that the Legislature has specified that notwithstanding the provisions of Civil Code section 4800, subdivision (a), requiring an equal division of community property, "Where economic circumstances warrant, the court may award any asset to one party on such conditions as it deems proper to effect a substantially equal division of the property." (Civ. Code, § 4800, subd. (b)(1).)

## V. *Attorney Fees*

Elmer contends it was an abuse of discretion for the trial court to award Joan $15,000 in attorney fees because this effectively rewarded Joan for what Elmer sees as the successful perpetration of fraud on the court in obtaining the order setting aside the previous interlocutory judgment.

It is well settled that the award of attorney fees and costs in family law matters is within the broad discretion of the trial court and that court's decision in a particular case will not be disturbed on appeal absent a clear showing of abuse of discretion. (*In re Marriage of Behrens* (1982) 137 Cal.App.3d 562, 575 [187 Cal.Rptr. 200]; and cases cited therein.) Elmer has failed to make such a showing.

The trial court made the following finding in support of its award of attorney fees: "The parties' dissolution proceedings were prolonged and complicated by [Elmer's] tactics and actions not based on good faith, which were frivolous and caused unnecessary delay. Due to [Elmer's] personal conduct during these proceedings, the nature of the litigation, its complexity, the nature and extent of contest, the amount involved, the financial circumstances of the parties, the skill required, the professional standing and reputation of the respective parties, the amount of skill and effort wisely devoted to the expeditious disposition of the case, the costs incurred and the parties' financial circumstances, it is reasonably necessary for [Elmer] to pay to [Joan] the sum of $15,000.00 in addition to any earlier amounts, for the cost of maintaining the proceedings and for attorney's fees through time of trial." The court also noted, that the "award of attorney fees was based on the evidence admitted during trial, the court also took judicial notice of its own court files and the fact that [Joan] prevailed in nullifying the property agreement. The court did not award [Joan] the full amount of attorney fees requested and clearly, but for the conduct of [Elmer], such a contest to nullify the agreement would not have been warranted if the agreement had been fair and equitable."

Thus, it can be seen that the award of attorney fees here, imposed in part because of the conduct of Elmer, was not based solely on Civil Code section 4370, which authorizes the award of attorney fees on the basis of need and ability to pay.

"While the attorney's fees the wife incurs as a result of the husband's dilatory tactics is an appropriate consideration in determining the amount of an award (see *Warner* v. *Warner* (1950) 34 Cal.2d 838, 842 [215 P.2d 20]), it is not sufficient to justify their award in the first instance. Such an award must be based solely on the respective abilities of the parties to pay.

(2 Markey, Cal. Family Law: Practice and Procedure (1984) Attorney's Fees and Costs, § 25.12[1][a], pp. 25-29.)" (*In re Marriage of Stephenson* (1984) 162 Cal.App.3d 1057, 1091 [209 Cal.Rptr. 383].) In other words, *Stephenson* held that awards of attorney fees under the Family Law Act, absent other statutory authority, must be made based upon the need of the recipient and the payor's ability to pay.

However, the instant case is to be distinguished from *Stephenson*. Prior to the trial here, the Legislature had adopted Code of Civil Procedure section 128.5, subdivision (a). Pursuant to this statutory enactment, trial courts now have the authority to order one party to pay attorney fees or other reasonable expenses to the other party which are incurred because of tactics or actions not based on good faith which are frivolous or cause unnecessary delay.[19]

There is considerable evidence in the record which supports the trial court's express findings. The trial court's award of attorney fees, expressly based on both Civil Code section 4370 and Code of Civil Procedure section 128.5, subdivision (a), was appropriate and should not be disturbed on appeal. There was no abuse of discretion.[20]

## VI. *The Family Residence**

. . . . . . . . . . . . . . . . . . . . . .

## VIII. *Disposition*

The judgment is modified to provide that: (1) community interest in Joan's retirement plan with the California Teachers' Retirement System is awarded

---

[19]Code of Civil Procedure section 128.5, subdivision (a) states: "Every trial court shall have the power to order a party or the party's attorney, or both, to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of tactics or actions not based on good faith which are frivolous or which cause unnecessary delay. Frivolous actions or delaying tactics include, but are not limited to, making or opposing motions without good faith."

[20]In adopting Code of Civil Procedure section 128.5 the Legislature has given trial judges a valuable tool to curb actions of litigants which are not in good faith. In family law cases, because of the emotional atmosphere surrounding the breakup of the marriage, judicious use should be made of this tool. Aggressive advocacy should not be stifled, but bad faith and repetitive courses of conduct should not be tolerated. This tool, at the very least, places the victim of conduct not carried on in good faith in the position of being made financially whole in opposing it. We have reviewed the entire record before us and find innumerable instances, some of which have been referred to in this opinion, which fully justify the trial court's imposition of attorney fees upon Elmer pursuant to Code of Civil Procedure section 128.5, subdivision (a).

*See footnote, *ante,* page 742.

one-half to each party and is determined to be that fraction of the retirement benefits the numerator of which is the number of months of Joan's service between the date of marriage of August 22, 1959, and the date of separation of April 19, 1980, and the denominator of which is the number of months of her total service multiplied by the amount of each benefit payment, and (2) any remaining benefit payment is confirmed to Joan as her separate property.

As so modified, the judgment is affirmed. The subsequent orders denying Elmer's motion to modify the interlocutory judgment and requiring him to relinquish possession to Joan and vacate the family residence are affirmed. Joan shall recover her costs on appeal, including attorney fees to the extent authorized by law.

Low, P. J., concurred.

**HANING, J.**—I concur in the result, based on my view that trial courts should have broad discretion in dissolution cases. The Family Law Act has created as many problems as it was intended to solve in the area of property distribution. Unfortunately, the appellate courts have added to the problem and created further confusion. We have also contributed mightily to the growth of the expert witness industry. Actuaries and other appraisers have never had it so good. This has, of course, only served to drive up the cost of obtaining a divorce, which is a regrettable consequence, since at the time the family is disintegrating the parties need to preserve, rather than dissipate, their assets.

When actuaries, such as those who testified as experts in the instant case, render their opinions on the present value of a pension plan, they necessarily make certain assumptions as to future economic conditions. As we know from various painful historical examples, economic forecasting is less than an exact science. Predictions of future human behavior are even less exact. Thus, when we accept testimony as to what the interest rate will be 10 or 20 years down the road, we are engaging in (to borrow a phrase from the Vice President) "voodoo economics." Trying to guess whether an individual will remain with a particular employer long enough to ever collect a nickel by way of pension is hazardous at best, and sheer tomfoolery when we start awarding large sums of present cash based upon such guesswork.

In short, in those situations where the pension is unvested, or where certain conditions remain to be fulfilled before the employee can collect any-

thing, I think the better practice is to defer the division of that asset until such time as we know what we have.

A petition for a rehearing was denied June 11, 1985, and appellant's petition for review by the Supreme Court was denied August 14, 1985.

EXHIBIT

# PRESENT VALUATION OR RESERVATION OF

**EMPLOYEE-SPOUSE**

| Present Valuation | Reservation of Jurisdiction |
|---|---|
| 1. Ability to control all of benefits when pension matures. | Pension may never mature (due to death, cessation of employment, or termination of business). |
| 2. Avoids potentially-protracted litigation over pension. | Avoids potentially complex and lengthy trial concerning present valuation of pension. |
| 3. Permits employee-spouse to take full advantage of future salary increases (avoids "time rule"). | Plan benefits may become less generous in the future. |
| 4. Full freedom to elect among alternative benefit packages when pension matures. | Law may become less liberal toward non-employee spouse (e.g., courts may expand pre-emption doctrine). |
| 5. Avoids joinder of pension. | Avoids expense of actuary's valuation. |
| 6. May simplify drafting of divorce decree. | Non-employee spouse may die and never collect community share. |
| 7. Avoids possibility that pension payments may be converted to spousal support, under *In re Marriage of Verner* (1978) 77 CA3d 718, 143 CR 826, 1978 CFLR 1079. | Prevents non-employee spouse from devising community interest in pension. *(Waite* v. *Waite* (1972) 6 C3d 461, 99 CR 325, 492 P2d 13). |
| 8. If pension division is taxable, permits employee-spouse possibly to claim a "stepped-up" basis. | Employee-spouse may not have to pay tax on community share of pension benefits paid to non-employee spouse. |
| 9. Permits employee-spouse to take full advantage of future liberalized pension rules or conditions (e.g., earlier vesting). | May reduce—or obviate—future spousal support obligation when both spouses receive pension payments. (See *In re Marriage of Stenquist* (1978) 21 C3d 779, 148 CR 9, 582 P2d 96, 1978 CFLR 1198). |
| 10. May be more acceptable to employer (who will not have to be concerned with possible enforcement problems). | May escape garnishment (especially if the pension is a federal non-civil service benefit). |
| 11. May permit employee-spouse to have increased ability to provide for second spouse and children. | Provides employee-spouse with more liquid assets at the time of trial (when he or she may most need them). |

 Copyright © by California Family Law Report, Inc. Box 2377, San Francisco CA 94126

## JURISDICTION: PRACTICAL CONSIDERATIONS

### NON-EMPLOYEE SPOUSE

| Present Valuation | Reservation of Jurisdiction |
|---|---|
| Avoids possibility that pension may never mature. | Ability to exercise control over half of community share of benefit, upon maturity. |
| Avoids potentially-protracted litigation over pension. | Avoids potentially complex and lengthy trial concerning present valuation of pension. |
| Plan benefits may become less generous in the future. | Permits non-employee spouse to share in future salary increases, under "time rule" (See 1977 CFLR 1138). |
| Law may become less liberal toward non-employee spouse. | Possible ability to have "veto power" in electing among alternative benefit packages. (See 1978 CFLR 1011). |
| Avoids joinder problems. | Avoids expense of actuary's valuation. |
| Non-employee spouse may die and never collect share. | May simplify drafting of divorce decree. |
| Non-employee spouse can devise lump-sum "cash-out", but not future pension payments. | Pension payments may possibly be converted to spousal support, under *Verner.* |
| Avoids income tax liability on future payments (if "assignment of income doctrine" does not apply). | Better to receive community share of future payments, since non-employee spouse may have future "assignment of income" tax liability even without receiving payments. (See 1978 CFLR 1181). |
| Without monthly pension income, may facilitate future claim for support. | Permits non-employee spouse to share in future liberalized pension rules. |
| Avoids enforcement problems. | |
| Provides non-employee spouse with more liquid assets at the time of trial. | May permit non-employee spouse to have increased ability in the future to provide for second spouse and children. |

Copyright © by California Family Law Report, Inc., Box 2377, San Francisco, CA 94126