[Civ. No. 69610. Second Dist., Div. One. Jan. 2, 1985.]

In re the Marriage of MARYEMMA H. and
CHARLES MILTON HARGRAVE.
MARYEMMA H. HARGRAVE, Appellant, v.
CHARLES MILTON HARGRAVE, Respondent.

## COUNSEL

Simon Taub and Edward J. Horowitz for Appellant.

Rhodes, Maloney, Hart, Mullen, Jakle & Harding, J. William Maloney and Mark Garrett for Respondent.

## OPINION

**DALSIMER, J.**—The trial of this matter, which culminated in the dissolution of a 26-year marriage, was heard by retired superior court Judge Charles Loring sitting as a referee. At the termination of the trial, each party submitted proposed findings of fact and conclusions of law. Thereafter, the referee signed findings and conclusions virtually identical to those submitted by respondent, Charles Hargrave (husband). The judgment prepared by the referee was adopted and signed by Judge Lavine. The judgment together with an order indorsed thereon and signed by the referee indicates that appellant's (wife's) objections to the referee's findings of fact and conclusions of law were overruled.

Effective January 1, 1982, the Legislature adopted Statutes 1981, chapter 900, sections 1-2, pages 3425-3426, which abolished findings of fact and conclusions of law and substituted therefor a procedure for a statement of decision explaining the factual and legal basis for the court's decision as to each of the principal controverted issues. Ignoring this statutory change, the parties, the referee, and the trial court proceeded under the preexisting provisions for the preparation and challenging of findings of fact and conclusions of law. As no one objected to this procedure either in the trial court or on this appeal, we make this observation solely for the sake of clarity.

In our review, we construe the findings of fact and conclusions of law as constituting a statement of decision.

During the marriage wife maintained the home while husband conducted a business known as Charles Hargrave Associates, Inc. The income of Charles Hargrave Associates was derived primarily from personal services rendered by husband as a manufacturer's representative. The parties accumulated community property, which was valued by the referee and divided in the following manner:

"Division of Community Assets

| "Assets | Petitioner Wife | Respondent Husband |
|---|---|---|
| "A. House | $671,200 | |
| "B. Furniture and furnishings | 6,000 | |
| "C. Mercury automobile | 1,500 | |
| "D. Hargrave & Associates | | $179,000* |
| "E. Hargrave Pension Plan | | 336,908 |
| "F. Stock | | 24,500 |
| "G. Warehouse | | 250,000 |
| "H. CD's/bank accounts—wife | 50,000 | 4,146 |
| "I. Cash—husband | | -0- |
| "J. ⅓ interest in apartment house "(Santa Monica) | | 163,000 |
| "K. MBM (with pension loan) | | −155,500 |
| "L. Responsive Software | ½ | ½ |
| "M. Grantor's Trust | ½ | ½ |
| "N. Income Tax Liability | − 50,000 | − 50,000 |
| "O. Cancel. debt (reim. husband) | | − 37,124 |
| | "678,700 | 714,930 |

"*Includes good will valued at $35,000."

Wife asserts that the referee erred by crediting the testimony of husband concerning the value of the residence over that of wife's expert. Although the referee tended to agree with husband rather than wife in deciding contested issues, it clearly was within his discretion to do so.

■ Wife incorrectly contends that husband's testimony concerning the value of the residence was inadmissible. Even though husband's opinion of the value of the property was $100,000 higher than that testified to by a qualified real estate appraiser, the law is that the owner of property is qualified to give his opinion of its value. (Evid. Code, § 813, subd. (a)(2).) The disparity between husband's testimony and that of the qualified expert goes to the weight of the evidence, not its admissibility.

■ Noting that the opinion testimony of any witness must be based upon matter perceived by or personally known to the witness and that such matter must be of a nature that can be reasonably relied upon by an expert in forming an opinion (Evid. Code, § 814), wife argues that, because husband gave no reasons for his opinion, the court was compelled to reject his testimony. The argument is disingenuous. Wife neither cross-examined husband concerning his reasons nor did she object to his testimony. She failed to urge the court to exercise its discretion to require the witness to state the basis of his opinion prior to stating that opinion. (Evid. Code, § 802.) Having refrained from testing the credibility of husband's opinion in the trial court, wife is foreclosed from challenging the admissibility thereof in this court.

■ In the trial court wife objected to the findings of fact on the grounds, inter alia, that there is no substantial evidence to support the referee's finding that the value of the goodwill of the community property business was $35,000. Wife makes that same contention here.

Wife's expert testified that Charles Hargrave Associates had goodwill valued at $100,000. On both direct and cross-examination he stated the basis for that opinion. Husband offered his own testimony and that of two experts to the effect that there existed no goodwill asset in the business. The testimony of husband's experts indicates that they did not consider those matters that the law requires to be considered in determining the value of a personal service enterprise such as Charles Hargrave Associates. The type of service offered by husband through Charles Hargrave Associates is closely akin to the type of services offered by accountants, lawyers, physicians, and other professionals.

■ Guidelines for determination of the value of professional goodwill were provided in *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 109-110 [113 Cal.Rptr. 58], disapproved on another point in *In re Marriage of Morrison* (1978) 20 Cal.3d 437 [143 Cal.Rptr. 139, 573 P.2d 41]. "Certain matters merit consideration which may be said reasonably to contribute to, diminish, or affect the intangible value of professional goodwill at the time of dissolution and the continuity and retention of the benefits thereof which the professional practitioner will continue to enjoy after the marital dissolution. In that context some such factors are the practitioner's age, health, past demonstrated earning power, professional reputation in the community as to his judgment, skill, knowledge, his comparative professional success, and the nature and duration of his business as a sole practitioner or as a member of a partnership or professional corporation to which his professional efforts have made a proprietary contribution." (*Ibid.*)

■ The error divulged in the testimony of husband's experts lay in their determination of value by positing what might occur if all husband's clients suddenly canceled their contracts with him. Likewise, their reliance upon how much husband might be able to obtain for the goodwill were he to attempt to sell the business was not a correct measure of value in the context of a dissolution proceeding. ■ As was pointed out in *In re Marriage of Foster* (1974) 42 Cal.App.3d 577, 584 [117 Cal.Rptr. 49], "The value of community goodwill is not necessarily the specified amount of money that a willing buyer would pay for such goodwill. In view of exigencies that are ordinarily attendant a marriage dissolution the amount obtainable in the marketplace might well be less than the true value of the goodwill. *Community goodwill is a portion of the community value of the professional practice as a going concern on the date of the dissolution of the marriage.* As observed in *Golden* [v. *Golden* (1969) 270 Cal.App.3d 401], '. . . in a matrimonial matter, the practice of the sole practitioner husband will continue, with the same intangible value as it had during the marriage. Under the principles of community property law, the wife, by virtue of her position of wife, made to that value the same contribution as does a wife to any of the husband's earnings and accumulations during marriage. She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a family business.' [Citation.]" (Fn. omitted, italics supplied.)

■ Thus, it may be seen that the referee correctly disregarded the testimony of husband and his experts concerning goodwill value. Wife asserts that the referee was bound to value the goodwill at $100,000 for the reason that this was the only evidence in the record after rejection of the evidence produced by husband. However, a judge is not bound to accept the testimony of any witness. (*Lohman* v. *Lohman* (1946) 29 Cal.2d 144, 149 [173 P.2d 657].) Alternatively, wife maintains that, as the referee did not explain the basis for the value of $35,000, the issue should be remanded for a redetermination.

A careful perusal of the record discloses no substantial evidence to support the referee's valuation of the goodwill. If the referee was relying upon evidence in the record, he has afforded neither the parties nor this court any clue whatsoever as to what it was. ■ This court recognizes that, in dividing community property, it is necessary to balance the amounts on either side of the ledger. It is, however, entirely inappropriate to achieve that balance by an arbitrary assignment of value to community assets. Without minimizing the burden cast upon trial judges in reaching conclusions concerning the value of property, we must insist that the legislative mandate of Code of Civil Procedure section 632 be honored. That mandate imposes a duty upon the trial court to explain "the factual and legal basis for its

decision as to each of the principal controverted issues at trial." **(3d)** There can be no question but that the goodwill value was a principal controverted issue in this case. Nevertheless, despite wife's objection to the referee's terse statement of value, she was provided no explanation whatsoever of the factual or legal basis of the referee's determination that the goodwill had a value of $35,000.

In meeting wife's complaint that the referee's valuation of goodwill is not supported by the evidence, husband relies exclusively upon *In re Marriage of Webb* (1979) 94 Cal.App.3d 335 [156 Cal.Rptr. 334] for the proposition that the trial judge may fix a value anywhere on the scale created by the range of evidence adduced. In *Webb,* expert testimony was adduced by the wife that the goodwill of Mr. Webb's investigation business was approximately $32,000. On the other hand, Mr. Webb testified that it had no value. The trial court fixed the value of the goodwill at $16,000, approximately one-half of the value fixed by Mrs. Webb's expert. After a close reading of *Webb,* we are not convinced that the court did in fact lay down a rule to be generally applied in valuation of assets by trial judges. The court observed that Mrs. Webb's expert conceded he had never previously valued a private investigation firm. (*Id.,* at p. 344.) Further, Mr. Webb testified that he knew of no sale of such a business in recent years and that the business had no market value. (*Ibid.*) We cannot glean from the opinion what findings of fact the trial judge made in *Webb* or if the appellate court found that such findings supported the judgment. If, contrary to our reading of the opinion, the *Webb* court actually was condoning a "flip-the-coin" or a "split-the-difference" determination by the trial judge, we are not disposed to follow such reasoning.

At any rate, *Webb* is of little assistance in resolving the difficulty in the case at bench. We are here faced with a trial court resolution of value at about one-third of the way from zero to $100,000, and there appears no discernible reason for the choice. ■ Because of the nature of the issues that must be adjudicated by trial judges in the family law courts, those courts are vested with wide discretion. That discretion, however, is not without limit, and its exercise may not be based on caprice or whimsy. Certainly, a family law judge may not adjust values merely to achieve mathematical equality in the division of community property. "Courts have often asserted that [judicial discretion] is broad and inclusive. That assertion is true, but it is true only within the limits of fixed legal principles [citation]. Such power cannot enlarge its own boundaries or support acts requiring other legal bases. Even within its legal limits the power is not unbridled. . . .

"· · · · · · · · · · · · · · · · · · · ·

■ "The term 'judicial discretion' was defined in *Bailey* v. *Taaffe*

(1866) 29 Cal. 422, 424, as follows: 'The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " (*Gossman* v. *Gossman* (1942) 52 Cal.App.2d 184, 194-195 [126 P.2d 178], original italics.)

██ The referee, having decided to reject all of the testimony on the subject of goodwill valuation, was left with a record barren of evidence on this vital issue. Under this circumstance the referee should have required the parties to furnish additional evidence or he should have appointed his own expert to testify on that issue. (See Evid. Code, § 460.)

██ Wife assigns as error the fact that, in computing the value of the community business, the court permitted husband to claim as a credit a debt owed by the business to husband's separate property pension plan established after the parties separated. This computation reduced the value attributed to the business by $99,984. The court valued the business as of the end of the current business fiscal year, that being a date "as near as practicable to the time of trial." (Civ. Code, § 4800, subd. (a).)[1] ██ Since wife failed to move pursuant to Civil Code section 4800, subdivision (a) for valuation of the business at a date closer to the time of separation, the referee correctly chose a date close to trial for that purpose.

██ The trial court was required to determine what portion of the $99,984, if any, was attributable to husband's efforts and abilities and what portion simply reflected corporate earnings. (*In re Marriage of Barnert* (1978) 85 Cal.App.3d 413, 423-424 [149 Cal.Rptr. 616]; *In re Marriage of Imperato* (1975) 45 Cal.App.3d 432, 438-439 [119 Cal.Rptr. 590].) The portion attributable to corporate earnings should have been credited to the community. In view of the evidence that husband received an annual salary of $120,000, that he had previously contributed approximately $26,250 per year to his pension plan, and that in 1982 the business suffered a $66,309

---

[1]Civil Code section 4800, subdivision (a) provides: "Except upon the written agreement of the parties, or on oral stipulation of the parties in open court, the court shall, either in its judgment of dissolution of the marriage, in its judgment decreeing the legal separation of the parties, or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community property and the quasi-community property of the parties equally. For purposes of making such division, the court shall value the assets and liabilities as near as practicable to the time of trial, except that, upon 30 days' notice by the moving party to the other party, the court for good cause shown may value all or any portion of the assets and liabilities at a date after separation and prior to trial to accomplish an equal division of the community property and the quasi-community property of the parties in an equitable manner."

loss, as well as the lack of evidence concerning the value of husband's business abilities, the finding that the entire $99,984 was husband's separate property is not supported by substantial evidence.

*In re Marriage of Barnert, supra,* 85 Cal.App.3d 413, reaffirmed the holding of *In re Marriage of Imperato, supra,* 45 Cal.App.3d 432, that, in valuing the corporate earnings and spouse's salary with regard to a community business operated after separation, "the apportionment formulas of *Pereira* v. *Pereira* (1909) 156 Cal. 1 [. . .] and *Van Camp* v. *Van Camp* (1921) 53 Cal.App. 17 [. . .], must be applied in reverse. . . . [T]he court must use whichever formula it deems appropriate. If the court chooses the *Pereira* approach, it 'would allocate a fair return of the increase to the community property and the excess would be the husband's separate property.' (45 Cal.App.3d at p. 439.) If the court chooses the *Van Camp* approach, it 'would determine the reasonable value of husband's services (less the draws or salary taken) and allocate this additional sum, if any, to husband as his separate property and the balance of the increase to community property.' (45 Cal.App.3d at p. 439.)" (*In re Marriage of Barnert, supra,* 85 Cal.App.3d 413, 423.) On remand, it will be necessary for the court to make the determination described in *Barnert* and *Imperato* as to the $99,984 placed in husband's new pension plan.

 Wife assigns as error the referee's requirement that she pay approximately 90 percent of her own attorney fees. That she was so required to bear her own fees is apparent from the order relating to division of the community assets, wherein the referee stated: "The foregoing division of assets provides for an equal division of community assets between the parties except for the fact that respondent husband will receive assets of a value of $36,230 more than petitioner wife. From this sum of $36,230, respondent husband should be ordered to pay the sum of $36,230 additional attorneys' fees and costs as follows: $20,615 to counsel for petitioner wife, and $15,615 to counsel for respondent husband. The reason for the apparent disparity in attorneys' fees and costs between counsel for petitioner and respondent is due to the additional burdens of discovery required of counsel for petitioner wife. After payment of said attorneys' fees and costs there will be a precisely equal division of community property."

In determining the issue as to who should pay the respective parties' attorney fees, it is necessary that the court "consider the respective incomes and needs of the husband and wife. [Citations.]" (*In re Marriage of Janssen* (1975) 48 Cal.App.3d 425, 428 [121 Cal.Rptr. 701].) "[The wife is] not required to impair her capital [in the absence of evidence concerning income from that capital] to finance marital dissolution litigation . . . . [Citations.]" (*Id.,* at p. 429.)

Husband's contention that wife received as part of her distribution $18,000 in separate funds plus $50,000 as her share of certain community certificates of deposit is ineffective to meet wife's argument concerning the relative incomes of the parties after the dissolution. The court awarded to husband all of the income-producing property of the parties. Wife received the family home, which is encumbered, and $2,500 per month spousal support. The referee specifically found that wife's needs amount to $3,000 per month, and he deducted $500 per month therefrom based upon his conclusion that she would receive $500 per month income from the $50,000 awarded to her. The referee's reasoning is fallacious because he also ordered wife to pay $50,000 to the United States Internal Revenue Service as her share of back taxes owed by the community. Thus, husband has an income of $120,000 per year salary plus a large amount per year paid into a pension plan as well as significant earnings from the income-producing community property awarded to him. As the court specifically found that the amount of wife's attorney fees was due to the additional discovery burdens required of wife's counsel, it is patent that the referee abused his discretion in requiring wife to pay the bulk of her own attorney fees.

The judgment is reversed. The matter is remanded to the trial court. The court is ordered to conduct a new trial on the issues of valuation of the community property business and appellant's attorney fees.

Spencer, P. J., concurred.

**HANSON (Thaxton), J.**—I concur with the majority opinion on the resolution of two of the issues presented on appeal but respectfully dissent as to the other two.

First, I agree with the majority opinion that there was substantial evidence in support of, and that there was no abuse of discretion in, the valuation of the family residence.

Second, I disagree with the majority opinion that there was no substantial evidence to support the referee's valuation of professional goodwill and that he should have required the parties to furnish additional evidence or should have appointed his own expert. The discretion to accept or reject, in whole or in part, the evidence submitted by the contesting parties on that issue is vested in the referee. Contrary to the majority's opinion, Evidence Code section 460 does not mandate that the referee should have obtained more expert testimony bearing on this issue. Section 460 provides that the court "may," (not "shall") appoint such expert witnesses.

Third, I agree with the majority opinion that the issue concerning the husband's claimed credit for the debt owed by the business to his (hus-

band's) separate property pension plan (established after the parties separated) should be remanded for reevaluation in accordance with *In re Marriage of Barnert* (1978) 85 Cal.App.3d 413 [149 Cal.Rptr. 616] and *In re Marriage of Imperato* (1975) 45 Cal.App.3d 432 [119 Cal.Rptr. 590].

Fourth, I disagree with the majority opinion's finding that the referee abused his discretion in awarding attorney's fees.

In sum, I would affirm all findings except that issue pertaining to the amount of husband's claim in respect to his pension plan. I would remand solely for redetermination of that issue with directions to follow the guidelines in *Barnert* and *Imperato*.