[No. B078033. Second Dist., Div. Four. July 20, 1995.]

In re the Marriage of MARYEMMA and CHARLES MILTON HARGRAVE.
MARYEMMA HARGRAVE, Appellant, v.
CHARLES MILTON HARGRAVE, Respondent.

COUNSEL

Honey Kessler Amado for Appellant.

Maloney & Mullen, J. William Maloney and Christine M. Arden for Respondent.

OPINION

EPSTEIN, Acting P. J.—Appellant/petitioner Maryemma Hargrave appeals from a postjudgment order enforcing obligations under a 1983 dissolution judgment. Appellant contests the court's power to impose liability for delinquent income taxes on one declared to be an "innocent spouse" by the Internal Revenue Service. Appellant also disputes the court's allocation of interest due on the tax liability, and its decision to award attorney fees as sanctions. We affirm.

### STATEMENT OF FACTS

Maryemma Hargrave and respondent Charles Hargrave were married for 26 years, and had 5 children. Charles operated his own business, Charles Hargrave & Associates, while Maryemma worked as a full-time housewife. In January of 1981 they separated. On January 21, 1983, an interlocutory judgment of dissolution of marriage was entered after a reference hearing.

In the dissolution judgment, Maryemma was awarded the family home and furnishings, an automobile, certificates of deposit and bank accounts, one-half interest in two limited partnerships known as Responsive Software and The Grantor's Trust together with one-half of any of their liabilities, and "[o]ne-half of any and all income tax liabilities to the Internal Revenue Service of the U.S. Federal Government or the Franchise Tax Board of the State of California for income taxes for any year during the marriage of the parties to and including 1980." Charles received all of the stock in Charles Hargrave & Associates, all of the interest in his pension and profit-sharing plan, a warehouse, an interest in an apartment in Santa Monica, all of a limited partnership known as MBM together with all liabilities associated with it, the other half of the assets and liabilities of Responsive Software and The Grantor's Trust, a stock account and various stocks, and "[o]ne-half of any and all income tax liabilities to the Internal Revenue Service of the U.S. Federal Government or the Franchise Tax Board of the State of California

for income taxes for any year during the marriage of the parties to and including 1980." In addition, a debt owed to Charles due to his postseparation payment of community debts with separate property, was canceled. The parties' postdissolution property and liabilities were valued by the referee as follows:

| | Maryemma | Charles |
|---|---|---|
| House | $671,200 | |
| Furniture and furnishings | 6,000 | |
| Mercury automobile | 1,500 | |
| Hargrave & Associates | | $179,000 |
| Hargrave Pension Plan | | 336,908 |
| Stock | | 24,500 |
| Warehouse | | 250,000 |
| CD's/bank accounts—wife | 50,000 | 4,146 |
| Cash—Husband | | 0 |
| ⅓ interest in apt. house | | 163,000 |
| MBM (with pension loan) | | (155,500) |
| Responsive Software | ½ | ½ |
| Grantor's Trust | ½ | ½ |
| Income Tax Liability | (50,000) | (50,000) |
| Cancel. debt (reim. husband) | | (37,124) |
| Total | $678,700 | $714,930 |

Maryemma appealed the judgment contending that the home and good will of the business were improperly valued, and that the referee erred in crediting a debt owed by the business and in the allocation of attorney fees. In a published opinion, *In re Marriage of Hargrave* (1985) 163 Cal.App.3d 346 [209 Cal.Rptr. 764], Division One of this court reversed in part and remanded, ordering the referee to recalculate the good will of the business, the amount of credit to Charles's separate property, and attorney fees. (163 Cal.App.3d at p. 357.) The court affirmed the valuation of the home. (*Id.* at pp. 351-352.) Maryemma did not raise as an issue at that time the portion of the order requiring her to pay one-half of all tax liability incurred during the marriage. In August 1987, the parties entered into a stipulation and judgment on reserved issues, which provided that the division of assets and liabilities would remain in full force and effect.

In or about October of 1982, at the time the 1981 income tax returns were filed, the parties entered into a letter agreement concerning the 1981 taxes. Under the agreement, Charles was to get any refund, but he was to pay any future tax liability up to the amount of the refund. If future tax liability exceeded the refund, the parties were to split it one-third to Maryemma, two-thirds to Charles.

Through their utilization of various types of tax shelters, the parties paid very little in income taxes in the years from 1977 through 1981. Although it is not clear from the record precisely when the Internal Revenue Service (IRS) began its investigation of the couple's tax returns, it is apparent from the referee's order that the parties contemplated there would be additional tax liability for those years. Charles and his attorney handled all dealings with the IRS. In December of 1989, the IRS reached a tentative agreement with them as to the amount owed. The agreement specified $5,670 was owed for 1977; $28,949 for 1978; $48,864 for 1979; $13,012 for 1980; and $36,999 for 1981. To this, certain nominal penalties were added, totaling $2,170. In addition, the IRS assessed interest at statutory rates which ranged from 6 to 16 percent per year, but generally exceeded 10 percent. On top of that was an amount attributable to additional interest (calculated at 120 percent of the normal statutory interest rate) on the "tax-motivated transactions."

In December of 1989, counsel for Charles sent a letter to counsel for Maryemma stating that each of them owed $203,873 under the agreement, and requesting that she pay the IRS her share, i.e., one-half of the 1977, 1978, 1979, and 1980 delinquent taxes plus interest assessed at the IRS rates, and one-third of the 1981 delinquent taxes plus interest assessed at the IRS rates, less the refund.

Instead of remitting payment, Maryemma retained counsel and sought "innocent spouse" status pursuant to Internal Revenue Code section 6013(e). That status was conferred as a result of separate negotiations between Maryemma and the IRS. A United States Tax Court decision rendered March 17, 1992, "pursuant to agreement of the parties," and "under the provisions of I.R.C. § 6013(e)," assessed against Charles Hargrave alone $5,670 for 1977 and $28,949 for 1978, in other words, the entire delinquent tax liability of the couple for those years per the earlier settlement. The order was signed by both Charles and Maryemma, and by district counsel for the IRS. It states: "It is further stipulated that execution of this decision on behalf of petitioner Charles M. Hargrave does not signify his agreement with [the IRS] determination that petitioner Maryemma H. Hargrave is an innocent spouse within the meaning of IRC § 6013(e)." At about the same time, a settlement, signed by Charles Hargrave alone, was reached for the 1979, 1980, and 1981 tax years. Under the settlement, Charles agreed to pay amounts which were identical to those in the 1989 proposal. Reference was also made in that document to Maryemma's status as innocent spouse.

In July of 1992, Charles sought an order to show cause to reduce spousal support and obtain from Maryemma her share of the delinquent taxes owed

for the years 1977 through 1981. In the declaration filed in support, he stated that he had paid one-half the taxes due, or $203,873, in December of 1989. Maryemma opposed on the ground that as an "innocent spouse," she was no longer liable for the tax debt. The court initially ruled in favor of Maryemma. On reconsideration, however, the court ordered Maryemma to pay to the IRS one-half of the income taxes assessed for the years 1977 through 1980 and her share of the 1981 taxes pursuant to the 1982 agreement. In addition, she was ordered to pay interest at the IRS rate through December 31, 1987, and at the California legal rate of interest thereafter. This totaled about $230,000 through June 30, 1993. If Maryemma paid within 60 days of June 22, 1993, then Charles was to pay $5,000 of her attorney fees. But if she did not, she was ordered to pay the money directly to Charles, plus $10,000 of his attorney fees.[1]

I

■ Appellant's primary contention on appeal is that federal law, specifically section 6013(e) of the Internal Revenue Code, preempts all state law efforts to impose liability for federal income taxes on anyone designated an "innocent spouse." We do not believe that to be the case. The determination of innocent spouse status is made at an administrative hearing or, as in this case, during the course of informal negotiations. The IRS's only concern is the identity of the spouse to whom it will look for payment of the delinquent taxes in the first instance. (See *Garvey* v. *Commissioner*, T.C.Memo 1993-354 [66 T.C.M (CCH) 355]; *Estate of Ravetti* v. *Commissioner*, T.C.Memo 1989-45 [56 T.C.M. (CCH) 1176].) Because the IRS does not treat this as a determination of the rights and duties between the spouses, the other spouse is not permitted to participate or present countervailing evidence in the proceedings which culminate in bestowal of innocent spouse status. (*Ibid.*)

In *Ravetti* v. *U.S.* (9th Cir. 1994) 37 F.3d 1393, an appeal from the Tax Court decision in *Estate of Ravetti* v. *Commissioner*, *supra* [decided after the briefing in this case], the Ninth Circuit affirmed that the supremacy clause has no impact on a state court's ability to impose federal tax liability on an "innocent spouse." In *Ravetti*, the husband's estate sought to overturn as error a Tax Court ruling that he had no standing to challenge the innocent spouse relief granted to his ex-wife. The estate argued "that it ha[d] standing to challenge the IRS determination, because that determination will control the result in state court under the Supremacy Clause and by res judicata." (37 F.3d at p. 1395.) The court disagreed, noting that the only harm which results from the determination is "to the IRS, in depriving it of an additional

---

[1]The court also reduced spousal support, and ordered each party to pay his or her share of any taxes assessed by the California Franchise Tax Board within 90 days of assessment.

source from which to recover." (*Id.* at p. 1395.) As to the question of whether, "as an equitable matter," the innocent spouse should have to contribute anything to the other spouse, the court held: "The Supremacy Clause has no application, because the state court will not purport to determine how much [wife] or [husband's] estate must pay the IRS. Res judicata will not apply because [husband's] estate was not party nor in privity with [wife] or the IRS in her innocent spouse adjudication." (*Id.* at p. 1395-1396.) The court specifically recognized that state courts have the power to enforce contribution rights in favor of the other spouse, whether created by a "divorce decree" or "general contribution statute," even though the IRS chooses not to pursue the "innocent spouse." (*Id.* at p. 1395.)

We agree with the Ninth Circuit that the important federal interest to be protected here is the right of the IRS to obtain direct payment of federal taxes from the party of its choosing. The federal government has no interest in how the states allocate tax liability between divorcing spouses, as long as they do not attempt to interfere with IRS collection efforts.

Although *Ravetti* is answer enough to the preemption issue raised by appellant, we also point out that the current procedural status of the case would preclude us from granting the relief sought. The original dissolution judgment, ordering Maryemma to pay one-half of all tax liabilities incurred by the parties during their marital years, was entered in 1983. The time to raise all issues relating to distribution of marital debts, including the propriety of assigning one-half the federal tax burden to an "innocent spouse," was prior to entry of that judgment. (See *Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 470 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368] ["Interlocutory divorce decrees are res judicata as to all questions determined therein, including the property rights of the parties."].) Appellant sought, in effect, to have the court reopen the 1983 judgment and re-apportion the previously adjudicated responsibility for tax liability. In the absence of extrinsic fraud, or some other recognized ground for granting such extraordinary relief, the court was correct in limiting its ruling to the rights and duties of the parties under the 1983 dissolution judgment.

II

Appellant argues that even if the supremacy clause does not preempt imposition of liability for federal taxes, the trial court erred in requiring her to pay interest on the sum at the higher rates charged by the IRS. Charles's accountant calculated that compared to a 10 percent rate, the interest rate charged by the IRS resulted in accrual of $30,000 more through March of 1993 for the 1977 through 1980 tax years alone.

It should first be noted that the court did consider the equity of requiring appellant to pay excessive interest, and in its order imposed interest at the IRS rates only through December 1987. Thereafter, appellant was ordered to pay only the California judgment rate.

The question of whether Maryemma should have been required to pay interest and penalties on top of the taxes due, is resolved in the first instance by review of the 1983 dissolution judgment imposing one-half of "all income tax liabilities" on each party. The trial court considered the proper interpretation of this provision, concluding that it meant "each of the parties is obligated to pay one-half of the federal and State of California income tax obligations, together with any interest and penalties thereon . . . ." We believe that interpretation is correct.

The court may also consider whether some action of respondent aggravated the situation, and resulted in more sums being assessed than might otherwise have been the case. Appellant's main contention in this regard is that respondent elongated the process, adding years of penalizing interest to the total due. While the record reflects that negotiations between respondent, his counsel, and the IRS dragged on through 1989, it also reflects that as a result of these negotiations, the IRS eventually accepted as proper some of the tax shelters, and waived its right to obtain additional penalties. In the meantime, nothing prevented appellant from stepping in to conduct her own negotiations. The fact that the IRS was willing to declare her an innocent spouse and refrain from collecting any amount from her strongly suggests she could have reached a compromise to pay something less than the total due, and thus bring to a halt the rapid accumulation of penalizing interest on her share of liability. Instead, appellant waited to see what kind of deal respondent could strike, and then sought to avoid responsibility for any portion. She was properly assessed a share of the accumulating interest.

## III

In her reply brief, appellant contends that she should have been given credit for "the $50,000 deducted from Maryemma's division of the community to pay for the anticipated adjustment" or for the tax refunds obtained for the years 1977 to 1980 as the result of subsequently disallowed deductions and exemptions. The record reflects that the $100,000 estimated tax liability was divided equally, with $50,000 being apportioned to Maryemma and $50,000 to Charles. No actual cash was deducted from either party's share of community assets; it was merely a debt reflected on

the court's "balance sheet," equally allocated to each.[2] As for the refunds obtained in 1977 to 1980, these were paid to Charles and Maryemma during their marriage. If they were improperly utilized by Charles for his personal benefit, that fact should have been raised prior to entry of the 1983 dissolution judgment. At this point, we can only presume that the tax refunds were spent for the benefit of the community. Certainly the fact that the parties divided nearly $1.5 million in assets at the end of their relationship, and currently show net worths of approximately $1 million each suggests that both obtained some benefit from the continual underpayment of income taxes.

## IV

Appellant's final assertion is that the trial court erred in imposing attorney fees as sanctions, but making payment contingent on failure to pay her share of the taxes owed to the IRS within 60 days. Section 271 of the Family Code permits the court to "base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." Under this statute, and its identical predecessor, "[t]he trial court may . . . impose fees as sanctions against an intransigent party for the party's own conduct, or for the conduct of an unprofessional counsel." (*In re Marriage of Daniels* (1993) 19 Cal.App.4th 1102, 1107 [23 Cal.Rptr.2d 865].) "The trial court has broad discretion to award attorneys' fees and costs in a dissolution action. The court's decision will not be disturbed on appeal absent a clear showing of abuse of discretion." (*In re Marriage of Czapar* (1991) 232 Cal.App.3d 1308, 1318-1319 [284 Cal.Rptr. 41].)

The record here amply reflects that appellant and her attorneys engaged in a series of stratagems to avoid the consequences of their initial failure to contest the 50-50 division of tax liabilities and their agreement to file a joint return for 1981. The trial court would have been justified in awarding sanctions based on appellant's conduct since at least 1989 in attempting to avoid paying any portion of the taxes due. The fact that the court gave her one last chance to avoid imposition of sanctions already assessable under section 271 of the Family Code, can scarcely be cause for complaint on the part of appellant. We do not believe the present appeal was frivolous due to the unclear effect of innocent spouse status prior to the

---

[2]As noted by Division One in the earlier appeal, Maryemma received $50,000 cash from which, the court presumed, her share of the tax liability would be paid. (*In re Marriage of Hargrave, supra,* 163 Cal.App.3d at p. 357.)

Ninth Circuit's recent decision, and we therefore reject respondent's invitation to award additional attorney fees under section 907 of the Code of Civil Procedure. We conclude, however, that the trial court's order imposing attorney fees under section 271 of the Family Code for "frustrat[ing] the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys" was proper and should be affirmed.

## DISPOSITION

The order is affirmed, and respondent is to have his costs on appeal. The request for sanctions is denied.

Vogel (C. S.), J., and Hastings, J., concurred.