Filed 11/19/14  Marriage of Sa and Martino CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re Marriage of THOMAS A. SA and CELESTE MARTINO. | H039875 (Santa Clara County Super. Ct. No. 1-97-FL-068680) |
| THOMAS A. SA, Respondent, v. CELESTE MARTINO, Appellant. | |

Celeste Martino appeals from an order awarding her supplemental attorney fees under Family Code sections 2030 and 3557 for her efforts to recover child support arrears from her former husband, Thomas A. Sa.[1]  Martino contends that the court abused its discretion by awarding her an insufficient amount to cover her attorney fees.  We will affirm the order.

*Background*

The parties' marriage was dissolved in December 1999, when their son was five years old.  They agreed at that time that Sa would pay Martino $700 a month in child support, along with half of the childcare costs and half of all agreed-upon educational expenses.  In November 2004, when their son was 10 years old, Martino moved to

_____

[1]  All further statutory references are to the Family Code.

modify child support and tuition allocation, claiming loss of employment and concomitant inability to pay half of the child's private school tuition. The court increased child support to $1,615 per month until March 1, 2006, at which time income of $5,000 a month would be imputed to Martino and child support would be reduced to $1,239 a month. Sa would also be subject to an "*Ostler-Smith*" order [2] for any bonus he might receive over his annual base salary of $156,744, reduced by Sa's payment of Martino's half of the tuition for the 2004-2005 school year. The parties were to bear their own attorney fees.

On February 15, 2012, when their son was 17 and in his last year of high school, Martino filed an order to show cause, claiming arrears in the *Ostler-Smith* payments and seeking $7,500 in attorney fees for the period from 2005 through 2011. In response, Sa submitted a declaration along with evidence of payments he had made to Martino, including voluntary increases in base child support in 2007 and 2009, so that by 2011 he was paying $1,800 a month. Sa also provided e-mail correspondence in which he and Martino had agreed that he would pay Martino's share of the child's tuition and deduct it from his *Ostler-Smith* payments. He claimed overpayment to Martino of $9,500, opposed Martino's attorney fee request as unreasonable, and sought attorney fees from her as a sanction for filing a "false motion."

The matter initially came on for hearing on April 12, 2012, but the court decided to continue it because Martino's counsel had not filed the necessary paperwork to comply with the California Rules of Court procedures for claiming attorney fees under section 2030. [3] When the proceedings resumed on May 3, the court heard argument and

[2] See *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 52 (court may award percentage of parent's bonuses as part of child support); accord, *In re Marriage of Mosley* (2008) 165 Cal.App.4th 1375, 1387.

[3] The court was referring to California Rules of Court, former rule 5.93. That rule was subsequently renumbered as rule 5.427, effective January 1, 2013.

then, noting the disparity in the parties' financial positions, ordered Sa to pay $5,000 in attorney fees under section 2030 and $3,500 in costs. The court then added, "And the message that I'm sending is that I'm not going to fun scorched-earth litigation. And you're going to have to make do with the modest award that I've given you at this time. And this Court's a big fan of folks who meet and confer and try to resolve things without running up attorney's fees."

Settlement negotiations eventually culminated in an agreement with respect to child support arrears. On February 5, 2013, the parties signed a "Stipulation and Order" providing for a $75,000 payment to Martino. The attorney fees issue, however, remained unresolved.

Martino then sought her additional attorney fees and costs. Citing sections 2030, 3557, and 271, she requested $33,667, along with $3,747.47 in costs, less the amounts "advanced" in the May 3, 2012 order, plus $2,100 in anticipated fees and costs for her reply and the hearing. Sa vigorously opposed the request. Each party accused the other of resisting settlement in bad faith. Martino asserted that Sa had "sandbagged his *Ostler-Smith* obligation and simultaneously manufactured an offset," and she had never agreed to pay half of their son's private school tuition. Sa met these allegations with his own account of the history of the parties' postseparation relationship. He reminded the court that he had previously had to resort to finding bank statements and copies of checks to Martino going back seven years and that he had voluntarily increased his monthly support amount. He also maintained that Martino had agreed to share the tuition cost, and that until now, when their son was about to graduate, she had never questioned the arrangement in which he would offset her share against his *Ostler-Smith* obligation. Sa requested attorney fees as a sanction for Martino's "repeated attacks on [his] character, honesty, and conduct in these proceedings"; her bad faith in reneging on the tuition agreement; and her refusal to attempt to resolve the issues between them.

3

The superior court issued a tentative decision finding Martino's request to be "unreasonable and unnecessary and unworthy of an augmentation of the original award of attorney fees and costs." After a hearing on the matter, however, the court found an additional amount to be justified. The court first denied both parties' requests for sanctions under section 271, finding that "although there were legitimate factual and legal disputes about several aspects of [Martino's] request for determination of *Smith/Ostler* arrears, each party engaged in conduct that frustrated the policy of the law to promote settlement of litigation and reduce the cost of litigation." Addressing Martino's request under sections 2030 and 3557, the court noted the significant "complicating factors" that had increased the attorney fees incurred by Martino. In light of those factors and the disparity in the parties' access to funds for legal representation, the court determined that an additional $3,000 to Martino was warranted. The court expressly recognized that this amount was "substantially less" than Martino claimed to have incurred, but it was the amount "reasonably necessary for the cost of maintaining the underlying proceeding." From that May 20, 2013 order, Martino brought this timely appeal.

*Discussion*

With only the most cursory acknowledgment of the scope and standard of this court's review, Martino revisits the history of this litigation, skewing the facts to favor her position below. Rather than focusing on the sufficiency of the evidence supporting the court's order, she contends that the court "disregarded substantial evidence" in determining her need for support and that it should have reached a contrary result. She misconceives our role, however. The existence of substantial evidence supporting the *appellant's* position is not sufficient for a reversal of the lower court's decision. We do not reweigh the facts, viewing them in the appellant's favor, nor do we determine whether substantial evidence supported the appellant's factual assertions. On the contrary, when the court's factual findings are challenged we determine whether substantial evidence supports the lower court's order. (*In re Marriage of Cryer* (2011)

4

198 Cal.App.4th 1039, 1047.) We view the record it in the light most favorable to the *prevailing* party and give that party "the benefit of every reasonable inference." (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1151, italics added; *In re Marriage of Rossi* (2001) 90 Cal.App.4th 34, 40.) It is the family court in the first instance that "sits as trier of fact and . . . is called upon to determine that a witness is to be believed or not believed. This is the nature of fact finding." (*In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099.) Martino's one-sided account of the events below is "an argumentative presentation that . . . disregards the most fundamental rules of appellate review" and "the admonition that she is not to 'merely reassert [her] position at . . . trial.' " (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1531.) "As Justice Mosk well put it, such 'factual presentation is but an attempt to reargue on appeal those factual issues decided adversely to it at the trial level, contrary to established precepts of appellate review. As such, it is doomed to fail.' " (*Ibid.*, quoting *Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 398-399.)

It has also not escaped our notice that the record contains no billing statements justifying Martino's $33,667 request, even though her attorney apparently submitted copies of them to opposing counsel. She acknowledges that the lower court did not have these statements either, but merely asserts that Sa "chose not to submit [them] . . . and [Martino] was not allowed to do so." On appeal, Martino fails to explain why "the requested fees should be presumed accurate and appropriate under the circumstances." On the contrary, "where items in a cost bill are properly challenged, they are put in issue, and the burden of proof is upon the party claiming them as costs." (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 624; *Hadley v. Krepel* (1985) 167 Cal.App.3d 677, 682.) In any event, the family court based its decision on its determination of what was *reasonable*. "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly

5

wrong.' [Citation.]" (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) The lower court was under no obligation simply to take counsel's word for the accuracy and justifiability of the amounts claimed. Nor are we.

Contrary to Martino's assumption, the family court had "considerable latitude to make a just and reasonable fee award." (*In re Marriage of Cryer*, *supra*, 198 Cal.App.4th at p. 1054.) Its decision is not reviewed de novo, but must be upheld absent "a clear showing of abuse of discretion." (*In re Marriage of Czapar* (1991) 232 Cal.App.3d 1308, 1318-1319.) "The discretion invoked is that of the trial court, not the reviewing court, and the trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made." (*In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 296; accord, *In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 769; *In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 866.)

The court's exercise of discretion must, of course, reflect consideration of the appropriate statutory factors. (*In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213, 1219; accord, *In re Marriage of Keech*, *supra*, 75 Cal.App.4th at p. 866.) To this end, sections 2030, 3557, 2032 provide the relevant guidance. In proceedings to enforce a child support order, section 3557 expresses the Legislature's paramount concern: "Notwithstanding any other provision of law, absent good cause to the contrary, the court, in order to ensure that each party has access to legal representation to preserve each party's rights, upon determining (1) an award of attorney's fees and cost under this section is appropriate, (2) there is a disparity in access to funds to retain counsel, and (3) one party is able to pay for legal representation for both parties, shall award reasonable attorney's fees" to the "custodial parent or other person to whom payments should be made." (§ 3557, subd. (a)(1)(A).)

Section 2030 also expresses the state's policy to "ensure that each party has access to legal representation . . . by ordering, if necessary based on the income and needs

6

assessments, one party, except a governmental entity, to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (§ 2030, subd. (a)(1).) Accordingly, if the court finds a "disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs." (*Id*., subd. (a)(2).) In addition, the order may, as the court did in this case, augment the original award "as may be reasonably necessary for the prosecution or defense of the proceeding . . . ." (*Id*., subd. (c).)

Section 2032 adds that the award must be "just and reasonable," which is determined by evaluating the "need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320." (§ 2032, subd. (b).) "In assessing the applicant's relative 'need' and the other party's ability to pay, the court may take into account 'all evidence concerning the parties' current incomes, assets, and abilities, including investment and income-producing properties.' " (*In re Marriage of Terry* (2000) 80 Cal.App.4th 921, 933, quoting *In re Marriage of Drake*, *supra*, 53 Cal.App.4th at p. 1167.) In addition to the parties' relative financial resources, the relevant circumstances include the nature and difficulty of the litigation, the skill required and employed by the attorney, and the time necessarily consumed in pursuing the litigation. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 318.) The court may also consider the parties' trial tactics. (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 975; *In re Marriage of Drake*, *supra*, at p. 1167; *In re Marriage of Sharples* (2014) 223 Cal.App.4th 160, 165.) The purpose of these provisions "is *not* the redistribution of money from the greater income party to the lesser income party," but rather "*parity*: a fair hearing with two sides equally represented." (*Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 251.)

To the extent that Martino accuses the family court of failing to take into account the parties' respective financial circumstances, she is simply wrong. The court expressly recognized and applied the mandates stated in sections 2030 and 3557, not only in the May 2012 order but also on this occasion in May 2013, "based upon the disparity in access to funds to retain counsel, and [Sa's] ability to pay attorney fees for both parties." The court's decision to add $3,000 to the previous award reflects a proper consideration of the applicable factors in determining what was "reasonably necessary" for Martino to pursue the issue of child support arrears, including the determination that her counsel's fees were excessive due to what one court has called "overlitigation." (*In re Marriage of Turkanis and Price* (2013) 213 Cal.App.4th 332, 356.) The family court in this case found that, notwithstanding its warning one year earlier, Martino had overlitigated this case even beyond the effect of the "complicating factors." Through her attorney Martino had made "false or misleading" claims that Sa's *Ostler-Smith* payments were "unknown"; she had delayed in seeking arrears and failed to provide a clear explanation of her factual and legal contentions; and she had failed to question Sa's deductions from his *Ostler-Smith* payments for her half of their son's tuition until 2012. Also complicating the court's evaluation were the nature of the stock awards received by Sa and the effect on *Ostler-Smith* support of Sa's voluntary increases in base child support payments.[4] For his part Sa had taken an unreasonable position on the extent of his *Ostler-Smith* obligation and by asserting that Martino's request was barred by res judicata.

We cannot find fault with any of the court's reasoning. " ' "The exercise of sound discretion by the trial court in the matter of attorney's fees includes also judicial evaluation of whether counsel's skill and effort were wisely devoted to the expeditious disposition of the case . . . [S]ervices [that] have no apparent effect other than to prolong

---

[4] On this point the court rejected the testimony of Martino's expert, whose calculations the court found to be "incorrect."

8

and to complicate domestic litigation cannot be deemed "reasonably necessary" [citation] "to properly litigate the controversy." '  [Citation.]"  (*In re Marriage of Turkanis and Price*, *supra*, 213 Cal.App.4th at p. 356.)  The record in this case discloses no " 'arbitrary determination, capricious disposition, or whimsical thinking' " by the family court, and we therefore cannot say that no judge would reasonably have made the same order.  (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1316; *In re Marriage of Battenburg* (1994) 28 Cal.App.4th 1338, 1343; *In re Marriage of Hargrave* (1985) 163 Cal.App.3d 346, 355; *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 7.)  Martino thus fails to meet her burden to show abuse of the court's sound discretion in determining that her claim for additional fees was excessive and that a justifiable amount was $3,000. Reversal is not required.

*Disposition*

The order is affirmed.

9

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

MÁRQUEZ, J.