Filed 12/30/15  Marriage of Dougherty CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of KAREN CHERI and PAUL J. DOUGHERTY. | |
| PAUL J. DOUGHERTY,<br><br>　　　　Respondent,<br><br>　　　　　　v.<br><br>KAREN CHERI DOUGHERTY,<br><br>　　　　Appellant. | F068651<br><br>(Super. Ct. No. VFL231978)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Tulare County.  Brett D. Hillman, Judge.

Law Office of Allen Broslovsky and Allen Broslovsky for Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth and Todd W. Baxter for Respondent.

-ooOoo-

Appellant appeals from the order on her former husband's motion for modification of spousal support.  The order denied that motion, but also denied appellant's request for an increase in spousal support and for payment of specified expenses, and authorized respondent to deduct a portion of the spousal support payments as payment of appellant's outstanding equalization obligation.  We conclude the trial court properly considered all

of the relevant statutory factors in determining whether to modify the support award. Further, appellant has not established any abuse of discretion in setting the support amount, declining to assign the debts to respondent, or permitting respondent to make deductions from spousal support for payment of the equalization obligation. Therefore, we affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*

On March 19, 2009, Paul J. Dougherty[1] petitioned for dissolution of his marriage to Karen Cheri Dougherty (Cheri). The parties had been married 25 years. In November 2009, the trial court entered a judgment of dissolution, status only. At the same time, the trial court ordered Paul to maintain COBRA health insurance coverage for Cheri, or an equivalent form of insurance if that was unavailable. In January 2010, the trial court ordered Paul to pay Cheri $1,600 per month in spousal support. Subsequently, the trial court ordered that, effective June 1, 2010, Cheri would be responsible for paying for her own health insurance. In the October 17, 2011, judgment on reserved issues, the trial court ordered Cheri to pay Paul an equalization payment of $6,931.68.

On July 3, 2013, Paul moved for modification of spousal support. He requested a reduction in spousal support due to Cheri's failure to use her best efforts to become self-supporting. Additionally, he asked that the court award him $3,900 that was paid to him as a result of a class action involving wrongful foreclosure on the parties' house; he asked that the funds be divided as community property, but that he be allowed to retain Cheri's share as an offset against the still-outstanding equalization payment. Further, Paul requested he be allowed to deduct $500 per month from spousal support toward payment of the equalization obligation.

---

**1** For convenience and clarity, we will refer to these individuals by their first names because they share a last name. No disrespect is intended.

In Cheri's response to Paul's motion for modification, she opposed each of Paul's requests. She requested that the trial court increase her spousal support to $2,100 per month, require Paul to pay an additional $359 per month for her medical and dental insurance, award the entire $3,900 in dispute to her, and order Paul to pay her $969 for outstanding registration fees on a vehicle she was awarded in the property division. Cheri opposed allowing Paul to offset any amounts she owed him against the spousal support; she requested Paul be ordered to pay her attorney fees.

On September 17, 2013, the trial court issued its order on the motion. It found no change of circumstances that would warrant a modification of spousal support. It denied Cheri's request for reimbursement of the vehicle registration fees and her health insurance premiums. The trial court found the disputed $3,900 to be a community asset to be divided equally; it allowed Paul to retain Cheri's share and apply it to her outstanding equalization obligation. The trial court further permitted Paul to deduct $200 per month from the spousal support to apply to the equalization obligation until it was paid in full. It ordered Paul to pay $1,300 to Cheri for her attorney fees, payable at $100 monthly. Cheri appeals from the order.[2]

## DISCUSSION

### I.      Standard of Review

"The modification of a spousal support order is reviewed on appeal for abuse of discretion. In exercising its discretion the trial court must follow established legal

---

[2]      Cheri's second request to augment the record, filed July 6, 2015, is denied as to exhibits A, B, and D. Cheri does not assert these documents were designated to be included in the record, but were omitted by the clerk. (Cal. Rules of Court, rule 8.155(b)(1).) Nothing in the record, including the docket, or in Cheri's second request to augment, demonstrates these documents were ever filed or lodged with the trial court. Accordingly, they are not proper documents with which to augment the record. (*Id*., rule 8.155(a)(1)(A).) In light of the lack of opposition, the second request to augment the record is granted as to exhibits C, E, and F. (*Id*., rule 8.155(a)(1)(A), (B).)

principles and base its findings on substantial evidence. If the trial court conforms to these requirements its order will be upheld whether or not the appellate court agrees with it or would make the same order if it were a trial court." (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 47, fn. omitted.)

## II. Modification of Spousal Support Order

Spousal support is governed by statute. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 302 (*Cheriton*).) When ordering or modifying spousal support, the trial court must consider and weigh all of the factors set out in Family Code section 4320[3], to the extent they are relevant to the particular case. (*Cheriton,* at p. 302; *In re Marriage of Shaughnessy* (2006) 139 Cal.App.4th 1225, 1235.)

""Modification of spousal support ... requires a material change of circumstances since the last order. [Citations.] Change of circumstances means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs."" (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 899 (*Bower*).) Cheri contends the trial court abused its discretion, both by failing to increase spousal support in light of changes in her circumstances that increased her need for additional support and by affirmatively reducing the amount of support she will receive.

### A. Decrease in support

Cheri asserts the trial court improperly reduced her spousal support without considering all the relevant factors set out in section 4320. The trial court, however, did not reduce her spousal support. Rather, it found there were no changed circumstances that warranted a reduction or increase in the award. Accordingly, the January 27, 2010, order awarding Cheri $1,600 per month in permanent spousal support remained in effect.

---

[3] All further statutory references are to the Family Code unless otherwise indicated.

### B. Failure to increase support

In response to Paul's petition seeking a downward modification in spousal support, Cheri filed a declaration requesting that her spousal support be increased to $2,100 per month. She asserted her circumstances had changed for the worse since the original support order, while Paul's income had increased.

The January 27, 2010, order stated Paul was a correctional officer earning a gross income of $66,863, which equated to $5,571.94 per month. He had remarried and was then paying one-half the monthly rent and utilities for the couple's residence. He reported total monthly expenses of $2,875. Cheri was unemployed, attending college part time. The parties' two adult sons were living with her, but had no income and were not contributing toward the household expenses. The order reflected Cheri contended she was so disabled she was unable to work. Her doctor testified she suffered from fibromyalgia, Addison's disease, osteoporosis, and spinal compression fractures due to osteoporosis. He opined she could engage in only part time employment, with no standing, bending, lifting, or squatting. The trial court was "at a loss, frankly, to understand why [the parties' sons] should not be paying [Cheri] a reasonable rent, and, if they will not, then why [Cheri] should not rent the bedrooms occupied by them to persons who would." The trial court found Cheri could work 20 to 25 hours per week at a non-stressful job and could collect rent on the spare bedrooms in the family home. It awarded Cheri $1,600 per month in spousal support.

In her declaration in response to Paul's 2013 motion to modify spousal support, Cheri stated her doctor declared her permanently and totally disabled as of February 2011. Thus, she could no longer work part time. Additionally, on August 1, 2013, she was evicted from the family home due to foreclosure. She had not been making mortgage payments during the four and one-half years the house was in foreclosure. Due to the eviction, she stated, she would now have to begin paying rent. Additionally, she would not be able to rent out rooms.

5.

Cheri also contended Paul's income had increased significantly since the original support order was entered. Although Paul reported base monthly pay of $6,310 in his income and expense declaration, Cheri calculated from the year to date figures on his pay stubs that he was earning approximately $8,400 per month, which presumably included overtime pay. Paul's 2013 income and expense declaration reported monthly expenses of $9,393, compared with $2,875 in 2010; Cheri contended the substantial increase must indicate he was including all household expenses, even though the declaration reflected that his wife earned $6,000 per month and contributed to the household expenses.

Cheri contends the trial court abused its discretion in finding no material change in circumstances warranting a change in spousal support. She contends the change to total, permanent disability, the loss of the house and resulting inability to receive rent, the need to pay rent, and Paul's purported 30 percent increase in salary together constituted a material change in circumstances that called for an increase in her support.

The trial court must recognize and apply each applicable factor in section 4320 in setting spousal support. (*Cheriton, supra,* 92 Cal.App.4th at p. 304.) "The first of the enumerated circumstances, the marital standard of living, is relevant as a reference point against which the other statutory factors are to be weighed. [Citations.] The other statutory factors include: contributions to the supporting spouse's education, training, or career; the supporting spouse's ability to pay; the needs of each party, based on the marital standard of living; the obligations and assets of each party; the duration of the marriage; the opportunity for employment without undue interference with the children's interests; the age and health of the parties; tax consequences; the balance of hardships to the parties; the goal that the supported party be self-supporting within a reasonable period of time; and any other factors deemed just and equitable by the court." (*Cheriton, supra,* 92 Cal.App.4th at pp. 303–304.)

The trial court has discretion to determine the appropriate weight to accord to each factor. (*Cheriton, supra,* 92 Cal.App.4th at p. 304.) "In making its spousal support order,

the trial court possesses broad discretion so as to fairly exercise the weighing process contemplated by section 4320, with the goal of accomplishing substantial justice for the parties in the case before it.… In awarding spousal support, the court must consider the mandatory guidelines of section 4320. Once the court does so, the ultimate decision as to amount and duration of spousal support rests within its broad discretion and will not be reversed on appeal absent an abuse of that discretion. [Citation.] 'Because trial courts have such broad discretion, appellate courts must act with cautious judicial restraint in reviewing these orders.'" (*In re Marriage of Kerr* (1999) 77 Cal.App.4th 87, 93, fn. omitted.) "'A trial court's exercise of discretion will not be disturbed on appeal unless, *as a matter of law,* an abuse of discretion is shown—i.e.,—where, considering all the relevant circumstances, the court has "exceeded the bounds of reason" or it can "fairly be said" that no judge would reasonably make the same order under the same circumstances.'" (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 479–480 (*Smith*).)

In orally ruling on the motion, the trial court discussed each statutory factor and the relevant facts of this case. It noted the prior order's finding that Cheri could work part time and rent out rooms; it acknowledged the new evidence of disability and that renting rooms was no longer an option. The trial court looked at Paul's base salary of $6,300 per month, and noted the base salary for a 40-hour work week was its usual starting point in calculating spousal support. It found the difference between that salary and the 2010 salary of $5,571 was "not a huge change in income." Consistent with the proscription in section 4323, subdivision (b), the trial court declined to consider the income of Paul's current wife in determining support. The trial court expressed concern that Cheri's income and expense declaration contained only estimates of her expenses; without actual expenses, it found it difficult to determine her actual needs.

Cheri argues the trial court abused its discretion by not increasing spousal support. She has not identified any statutory factor the trial court failed to consider in determining

7.

whether to modify support. In fact, her opening brief discusses the trial court's statements regarding each factor, demonstrating the trial court considered each factor in reaching its decision. Essentially, Cheri simply disagrees with the weight given to various facts and circumstances the trial court discussed in applying the statutory factors. That disagreement does not permit this court to reverse the judgment of the trial court.

Cheri asserts she met the burden of showing a material change in circumstances that warranted an increase in the support amount. The issue, however, is not whether the trial court could have made a contrary decision based on Cheri's showing; the issue is whether the trial court abused its discretion by making the decision it did make.

Contrary to Cheri's many representations about the change in Paul's income, his base salary had increased only about $700 since the time the original permanent spousal support order was made.

Paul's expenses had also increased, however. His income and expense declaration reported expenses greater than his salary. It indicated his current wife paid some of those expenses. The trial court apparently realized the declaration included Paul's household expenses, rather than his individual expenses. It noted that Cheri's income and expense declaration reflected twice as much expense as income, and commented that there was an apparent disconnect between her income and expense declaration and reality. It did not make a similar comment about Paul's income and expenses. The trial court observed that Paul had more assets than Cheri, but also that he had incurred substantial debt, including a debt to the Internal Revenue Service (IRS). The monthly payment to the IRS was $1,000. That payment alone exceeded the increase in Paul's monthly base salary. While the trial court should take into account the supporting former spouse's overtime, how it does so is within its discretion. "[A] supporting ex-spouse should not be penalized because he or she works 'excess hours' or otherwise undertakes 'an onerous work schedule.'" (*In re Marriage of Serna* (2000) 85 Cal.App.4th 482, 486.) Rather, the parties' standard of living during marriage and the supporting ex-spouse's earning

8.

capacity generally should not be based upon an extraordinary work regimen, but instead upon an objectively reasonable work regimen. (*Ibid*.) Thus, the trial court did not abuse its discretion by focusing on Paul's base salary.

The marital standard of living is not the absolute measure of reasonable need, but merely a reference point against which all of the statutory factors may be weighed. (*In re Marriage of Nelson* (2006) 139 Cal.App.4th 1546, 1560.) Spousal support is not required to meet all the needs of the supported spouse as measured by the marital standard of living; in most instances, it is impossible for either party to continue in the same lifestyle because of the expense of supporting two households instead of one. (*Smith*, *supra*, 225 Cal.App.3d at pp. 488–489.)

Whether the parties were living beyond their means during their marriage is also an appropriate factor for the trial court to consider along with other factors. (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 208 (*Ackerman*).) "A spouse 'cannot reasonably demand support at the actual marital standard of living if that standard had itself been unreasonably high under the circumstances.'" (*In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1316.) The original order setting permanent spousal support stated that, during marriage, the parties had a middle class standard of living while Cheri was working; when she ceased working, however, the parties incurred substantial debt. Both parties filed for bankruptcy to discharge that debt while the dissolution action was pending.

We note that equality of postdissolution income is not a factor to be considered under section 4320. It is the supported spouse's needs, not the supporting spouse's postdissolution separate property earnings or standard of living that must be considered. (*Ackerman*, *supra*, 146 Cal.App.4th at p. 209.)

"'In order to qualify for an increase in spousal support, the supported spouse must demonstrate two things: first, that material circumstances have significantly changed since the time of the last prior award and, second, that the reasonable present needs of the

9.

supported spouse are not being satisfied.'" (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 363.) The income and expense declaration Cheri submitted in support of her request for increased spousal support contained only estimates of her monthly expenses. The trial court was concerned that it did not have an accurate picture of her needs because it did not have evidence of her actual expenses. Cheri's responsive declaration stated she had been evicted from the family home and had temporary housing, but would soon have to begin paying rent. Although Cheri may have needed to estimate her future rent because she had not yet rented a residence, she did not explain why all of the expenses she included in her income and expense declaration were identified as estimates. A trial court is not required to accept the supported spouse's estimates or projections of future expenses in making its determination of an appropriate level of support. (*Ackerman*, *supra*, 146 Cal.App.4th at p. 208; *Smith*, *supra*, 225 Cal.App.3d at p. 487.) The trial court did not abuse its discretion by considering the lack of solid evidentiary support for Cheri's claimed expenses in balancing the section 4320 factors.

The trial court has broad discretion in balancing the statutory factors. (*In re Marriage of Baker* (1992) 3 Cal.App.4th 491, 498.) "Considering the myriad of factual circumstances which the trial court must consider in making its order, it is the rare case … where a court is duty bound to exercise its discretion in only one way." (*Ibid*.) We cannot reweigh the evidence, rebalance the statutory factors, or substitute our judgment for that of the trial court. (*Ibid*.) "Where the issue on appeal is whether the trial court abused its discretion, the showing necessary for reversal is insufficient if it merely emphasizes facts which afford an opportunity for a different opinion. [The appellant] must show 'that no judge would reasonably make the same order under the same circumstances.'" (*Ibid*.) Cheri has not shown that the trial court's determination exceeded the bounds of reason or that no judge would reasonably make the same order under the same circumstances. (*Ibid*; *Smith*, *supra*, 225 Cal.App.3d at p. 480.) Thus, she has not demonstrated an abuse of the trial court's discretion

## III.     Offsetting $200 of Spousal Support Against Equalization Payment

In the 2011 judgment on reserved issues, the trial court divided property and debts of the parties; it ordered that Cheri owed Paul an equalizing payment of $6,931.68. At that time, the trial court declined to authorize Paul to offset any portion of the equalizing payment against the spousal support payments.

In his 2013 request for modification of spousal support, Paul represented that none of the equalizing payment had been paid yet. He asked that he be allowed to reduce his monthly spousal support payments by $500 as payment of the debt until it was paid in full. The trial court permitted him to deduct $200 from the spousal support payments until the equalizing payment was paid in full. Cheri contends the trial court abused its discretion by permitting Paul to make that offset, because it reduced the amount she would receive per month.

Cheri cites no authority that allows her to let years pass without making any payment to reduce the debt. Both parties cite *Keck v. Keck* (1933) 219 Cal. 316. In *Keck*, the husband was ordered to pay alimony to his wife. When $2,587.50 had accrued but had not been paid, the trial court ordered the husband to pay the wife $1,000 in full settlement of his alimony debt. (*Id*. at p. 319.) The husband claimed this was proper because the wife owed him a preexisting debt greater than the difference between the two amounts. The court, however, stated the obligation to pay alimony is not an ordinary debt. (*Ibid*.) Unless the alimony decree so provided, a husband could not offset his obligation to pay monthly alimony against his wife's debt to him. (*Id*. at pp. 319–320.) An alimony decree could be modified as to future installments, but not as to already accrued installments. (*Id*. at p. 320.) In dicta, the court added: "We are inclined to the view that where a liberal support allowance suitable to the circumstances and financial condition of the parties is made, the court should have the right in a proper case to provide as a part of the decree that the husband may withhold a portion of the allowance each month in payment of his wife's indebtedness to him." (*Ibid*.) The decree for

11.

alimony did not contain such a provision, however. The subsequent order discharging part of the husband's accrued alimony debt by offsetting it against the wife's preexisting debt constituted an impermissible modification of accrued installments. (*Id*. at p. 321.) Accordingly, the order was reversed. (*Id*. at p. 322.)

The trial court's order in the present case did not attempt to offset a preexisting debt against accrued support payments. It authorized Paul to use a portion of future support payments as an offset against the equalizing payment. Thus, the order was consistent with *Keck*.

Cheri asserts the September 17, 2013, order is an impermissible collateral attack on the October 17, 2011, final judgment awarding spousal support, in which the trial court refused to allow an offset. The effect of the September 17, 2013, order, however, was to supply terms of repayment omitted from the final judgment and necessary to give effect to that judgment.

On dissolution of a marriage, the trial court is required to divide the community property equally between the parties. (§ 2550.) The trial court may award a community asset to one party "on such conditions as the court deems proper to effect a substantially equal division of the community estate." (§ 2601.) Where, because of the nature of the assets, the community property cannot be readily divided equally in kind, the court may order one party to make an equalizing payment to the other party. (*In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 746; *In re Marriage of Tammen* (1976) 63 Cal.App.3d 927, 929–930.) Generally, unless the payment can be made in cash, when an equalizing payment is used to divide the community property equally between the parties, the debtor spouse executes a promissory note, approved by the court, which specifies an appropriate interest rate and due date. (See, e.g., *Bergman,* at pp. 761–762; *In re Marriage of Slater* (1979) 100 Cal.App.3d 241, 248; *In re Marriage of Horowitz* (1984) 159 Cal.App.3d 368, 371.) "Courts have discretion to use promissory notes for relatively short periods at reasonable interest rates." (*Bergman*, at p. 761.) The court need not

require interest at the legal rate applicable to judgments. (*In re Marriage of Escamilla* (1982) 127 Cal.App.3d 963, 967.) If payment is deferred for an extended period, without interest, the actual value of the note will be less than the face value, resulting in an unequal division of the parties' property. (*Horowitz*, at p. 372.)

Here, the trial court entered a judgment on reserved issues that required Cheri to make an equalizing payment to Paul, but neglected to specify the terms of payment or to require Cheri to execute a promissory note containing such terms. By its September 17, 2013, order, the trial court effectively set a repayment schedule. Cheri has an obligation to make the equalizing payment to Paul in order to effectuate the equal division of property to which both parties were entitled. The obligation cannot simply be postponed indefinitely. Cheri has not shown that the trial court abused its discretion by permitting Paul to deduct payments toward the equalization obligation from the spousal support payments.

By permitting Paul to deduct a specified amount monthly as payment of the equalization obligation, the trial court has effectively established a payment schedule for the debt. The trial court, however, did not rule on the question whether, and at what rate, interest would accrue on the unpaid balance. We will remand to the trial court for a determination of that issue.

## IV. Health Insurance

In her opposition to Paul's request for modification of spousal support, Cheri requested that the trial court order Paul to pay her an additional $359 monthly to cover the cost of a health and dental insurance policy. She stated Paul was ordered to pay for her health insurance in connection with the November 9, 2009, judgment terminating status. She asserted he made only one payment thereafter, then terminated the insurance. The trial court denied Cheri's request.

Although the November 9, 2009, judgment was not made part of the record, the reporter's transcript of the hearing reflects that the trial court ordered Paul to maintain all

of Cheri's existing health and medical coverage, either by paying for Cheri's COBRA coverage or, if it was unavailable, by purchasing an equivalent form of insurance. The trial court indicated the requirements of section 2337 were to be met, and Paul's counsel represented he had drafted a document that included all the requirements of that section. Section 2337 authorizes the trial court to sever and grant an early trial of the issue of dissolution of the status of marriage, and permits the trial court to impose specified conditions on granting the severance. (§ 2337, subds. (a), (c).) One of the permissible conditions is that the requesting party maintain all existing health and medical insurance coverage, or comparable coverage, for the other party, until the judgment on all remaining issues has been entered and become final. (§ 2337, subd. (c)(2).)

The same judge who made the November 9, 2009, order requiring Paul to maintain Cheri's health insurance entered an order on May 26, 2010, requiring that Paul pay the cost of reinstating Cheri's health insurance coverage, then deduct that cost from his spousal support payments. The judge further ordered that Cheri be responsible for her monthly insurance premiums effective June 1, 2010.

In support of her request for an order requiring Paul to pay for her health insurance, Cheri argued in the trial court that Paul had been ordered to pay for it in November 2009, he had made only one payment, and her health had declined because of lack of insurance and the resulting lack of proper medical treatment. Her argument ignored the subsequent order making Cheri responsible for her own health insurance, effective June 1, 2010. In light of the later order, Cheri has not shown the denial of her request was an abuse of discretion.

In her appeal, Cheri argues for the first time that the requirements of section 2337 should be enforced. Cheri contends Paul should be ordered to pay all of Cheri's medical expenses, or at least the cost of health insurance, for the period from the date of bifurcation (November 9, 2009) to either the date of the judgment on reserved issues or June 1, 2010.

14.

"Ordinarily, issues not raised in the trial court proceedings are waived."
(*Woodridge Escondido Property Owners Assn. v. Nielsen* (2005) 130 Cal.App.4th 559,
574.) Further, the time to raise the issue was in May 2010, when the trial court addressed
the issue of reinstatement of Cheri's health insurance and payment of the premiums for it.
At the very least, the issue should have been raised before the final judgment on reserved
issues was entered in the dissolution action. That judgment is final, and the time for
reviewing it has passed. Consequently, we will not consider this belated argument.

## V.     Settlement Check of $3,900

In May 2013, Paul received by mail two checks, totaling $3,900, from
Independent Foreclosure Review. The checks were made out to both Paul and Cheri and
required signatures of both parties to negotiate them. Paul deposited them in his
checking account. Cheri claimed an interest in the funds, and the bank held the funds
pending resolution of the dispute. Paul's request for modification of spousal support
sought the trial court's determination that he be allowed to keep Cheri's half of the funds
and credit it against the outstanding equalizing payment.

The letters that accompanied the checks were addressed to Paul and stated he was
eligible to receive payment as a result of an agreement between federal banking
regulators and Litton, a loan servicer, "in connection with an enforcement action related
to deficient mortgage servicing and foreclosure processes." It further stated: "Regulators
determined your payment amount based on the stage of your foreclosure process and
other considerations related to your foreclosure."

In her opposition to Paul's motion, Cheri claimed entitlement to the entire $3,900.
She asserted Paul abandoned the house when they separated in January 2009 and he
stopped making the mortgage payments. The property entered foreclosure in May 2009,
and "the illegal foreclosure was recorded" on May 31, 2011. Cheri contended Paul
surrendered his interest in the property to the bank in his bankruptcy proceeding. She

15.

asserted she was evicted from the house on August 1, 2013, after fighting the foreclosure for four and one-half years.

At the hearing of Paul's motion, Cheri's attorney represented that the $3,900 payment was not made because of an illegal foreclosure, but because Cheri's request for a loan modification, made after the final dissolution was entered, had been denied. Paul's attorney objected to the document Cheri's attorney offered to prove that claim, and the court sustained the objection. On appeal, Cheri has made no argument that the proffered document was admissible and was improperly excluded from evidence.

A judgment or order of the trial court is presumed to be correct on appeal, and error must be affirmatively shown. (*Bower, supra*, 96 Cal.App.4th at p. 898.) No evidence was admitted in the trial court to show Cheri made a request for loan modification, much less that the $3,900 payment was made as a result of the denial of such a request. Cheri points to no evidence in the record and presents no legal argument in support of her assertion that Paul abandoned the property on separation or by failing to make mortgage payments. We note Cheri admits she also made no mortgage payments during the four and one-half years the house was in foreclosure.

Cheri inaccurately represents that Paul gave his one-half interest in the house to her and that the trial court "ruled" Paul was to quitclaim the house to her.[4] She apparently refers to the transcript of the January 21, 2010, hearing on spousal support, which reflects that Paul's attorney indicated Paul was willing to quitclaim the house to Cheri. The attorneys recognized he could not do so at that time because of a bankruptcy

---

[4]    Cheri's briefs contain a troubling number of statements of fact that are unsupported by any reference to the record, that cite passages in the record that do not support the statements made, or that mischaracterize the content of the record. "Each and every statement in a brief regarding matters that are in the record on appeal … must be supported by a citation to the record." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 96, fn. 2.) This is true throughout the brief, not just in the statement of facts section. (*Ibid.*) Representations regarding the facts contained in the record must also be accurate. (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 745.)

16.

stay, and there is no evidence a quitclaim deed was ever executed.[5] The formal order entered after that hearing contained nothing regarding quitclaiming the house to Cheri.

Cheri failed to present any legal authority concerning the effect Paul's bankruptcy filing, in which he indicated he intended to surrender his interest in the house to the bank, had on the parties' respective interests in the house for purposes of the dissolution proceeding. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

The trial court found the $3,900 payment was a community asset to be divided equally. Cheri has not demonstrated any error in that finding.

## VI. DMV Fees

In her response to Paul's request for modification of spousal support, Cheri asserted there was an outstanding debt owing to the Department of Motor Vehicles (DMV) for registration of a vehicle the parties owned during marriage. The fees apparently were for the years 2009 and 2010, and the due dates for payment were August 31, 2009, and August 31, 2010. Cheri asserted the fees were inadvertently left out of the judgment on reserved issues.

Paul declared Cheri had sole use and possession of the vehicle after their separation in February 2009. Further, the trial court awarded the vehicle to her in the judgment on reserved issues. Cheri argued she did not have sole possession of the vehicle after separation, asserting it was not operational at that time. She produced no evidence in support of either statement: that she did not have sole possession or that the vehicle was not operational. The trial court denied her request for the DMV fees.

Other than debts for common necessaries of life, debts incurred by either spouse after the date of separation but before entry of a judgment of dissolution are debts of the

---

[5] In fact, in her reply brief Cheri concedes Paul never executed a quitclaim deed to her.

17.

spouse who incurred the debt.  (§ 2623, subd. (b).)  Likewise, debts incurred after the judgment of dissolution of marriage has been entered and become final are the separate debts of the party who incurred them.  (See § 2624.)  A debt that does not arise out of a contract or a tort is incurred at the time the obligation arises.  (§ 903.)

The parties separated in January or February of 2009.  The judgment of dissolution as to marital status only was entered on November 9, 2009.  The registration fees came due on August 31, 2009, and August 31, 2010, and were therefore incurred on or about those dates.  The fees were incurred after the date of separation and fell within the provisions of sections 2623 and 2624; thus, they were debts of the spouse who incurred them.  Although Cheri denied the vehicle was operational,[6] she presented no evidence to contradict Paul's evidence that the vehicle was in her exclusive possession and control after separation, and therefore at the times the fees became due.  Accordingly, the trial court did not abuse its discretion by denying Cheri's request to require Paul to pay all or one-half of the registration fees.

---

**6**     The Vehicle Code contains provisions for deferring registration of a nonoperational vehicle.  (Veh. Code, § 4604.)

## *DISPOSITION*

The order on Paul's motion for modification of spousal support is affirmed.  We remand, however, for the trial court to resolve the unaddressed issue regarding whether, and at what rate, interest should accrue on the unpaid balance of the equalizing payment. Paul is entitled to his costs on appeal.

_____
                                 HILL, P.J.

WE CONCUR:


_____
GOMES, J.


_____
DETJEN, J.